# 22-1921

## United States Court of Appeals
## for the Second Circuit



JOHN KOWALCHUCK,

*Plaintiff-Appellant,*

-against-

METROPOLITAN TRANSPORTATION AUTHORITY,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK (Central Islip)

---

## APPELLANT'S APPENDIX

---

PHILIP J. DINHOFER LLC
*Attorneys for Plaintiff-Appellant*
77 North Centre Avenue - Suite 314
Rockville Centre, New York 11570
(516) 678-3500
*pjdllc2806@yahoo.com*

HOGUET NEWMAN REGAL & KENNEY, LLP
*Attorneys for Defendant-Appellee*
One Grand Central Place, 48th Floor
60 East 42nd Street
New York, New York 10165
(212) 689-8808
*hhechtkopf@hnrklaw.com*

---

DICK BAILEY SERVICE, Inc. · 1-800-531-2028 · dickbailey.com
[REPRODUCED ON RECYCLED PAPER]

# TABLE OF CONTENTS

*Page(s)*

Memorandum Decision & Order Appealed . . . . . . . . . . . . . . . . . . . . . . . . . . A1-A6

Judgment Appealed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A7

Notice of Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A8

District Court Docket Sheet - Electronic Index to Record on Appeal . . . . . A9-A18

Plaintiff's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A19-A22

Defendant's Answer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A23-A26

Defendant's Letter Requesting Pre-Motion Conference . . . . . . . . . . . . . . A27-A28

Exhibit 1 - Rule 56.1 Statement & Counter Statement . . . . . . . . . . . . . . . A29-A48

Electronic Order Granting Pre-Motion Conference . . . . . . . . . . . . . . . . . . . . . A49

Transcript of Pre-Motion Conference held March 6, 2020 . . . . . . . . . . . . A50-A76

Minute Entry for Pre Motion Conference held on March 6, 2020 . . . . . . . A77-A78

Cover Letter to Defendant's Pre-Trial Tender of Exhibits of July 22, 2022 . . . A79

Photo 21 - Full Size . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A80

Photo 21 - Zoom in on Key Fob. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A81

E-Mail From ECF Advising of Request for Pre-Motion Conference . . . . . . A82-83

**A001**

**FILED**
**CLERK**
8/4/2022 4:25 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

......................................................................X

JOHN W. KOWALCHUCK, JR.,

      Plaintiff,

   -against-

METROPOLITAN TRANSPORTATION
AUTHORITY,

      Defendants.

......................................................................X

**MEMORANDUM OF**
**DECISION & ORDER**

17-CV-2146 (GRB)

**GARY R. BROWN, United States District Judge**:

   This action, brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 5l, *et seq*., is set for a bench trial in several days.  While the Court had earlier rejected a motion for summary judgment, in preparing for trial, matters have come to the Court's attention that reveal that that determination was in error, because based upon undisputed fact and recent appellate law, the plaintiff simply cannot prevail.  While the Court could simply allow the matter to proceed to a short bench trial, such procedure would visit unjustified costs and encumbrances of travel and trial preparation upon the parties.  In fact, in this case, there are specific burdens that would be worked upon plaintiff should trial proceed. *See* DE 29 (letter noting that plaintiff, who has to travel from North Carolina, has suffered a series of strokes, is a cardiac care patient, and faces enhanced COVID risks).  Thus, while the Court regrets taking this action at the eleventh hour, the practical and evidentiary realities and common decency demand that the Court must reconsider its earlier determination and enter summary judgment in favor of defendant.

1

**UNDISPUTED FACTS**

The relevant, material undisputed (or ineffectually disputed) facts include the following: Plaintiff John Kowalchuk was hired by the LIRR – later becoming an MTA employee – as a police officer in 1996.  DE 24-1 ¶ 3.  He retired in 2016.  ¶ 4.  On January 27, 2015, Kowalchuk was assigned to desk duty at MTA's District 2 headquarters, working the 7:00 pm to 7:00 am shift.  ¶ 11.  It began snowing, and Kowalchuk started removing snow from the building's handicap access ramp.  ¶ 14.  He testified there was about 18" of snow on the ground.  ¶ 16.  He used a fiberglass shovel not designed for snow removal.  ¶ 18.

Kowalchuk reports that, as he was pushing snow from the ramp, the shovel hit a raised board, which injured his shoulder.  ¶¶ 20, 21.  Photographs of the ramp, taken some months after the incident, show a board at the juncture where the sloped portion of the ramp meets where the platform section was warped.  ¶ 41.  As a result, the edge of the board is slightly raised, though the planks meet perfectly at the center of the ramp.  ¶ 42.  One of the photos supplied demonstrates that the height of the defect at its worst point is approximately equally to the thickness of a key fob, which measures 6/16":



**A003**



¶¶ 41-42, p. 18 ¶ 2.  As shown in the exhibit and the detail above, only a small portion of the board is raised.  Other photos supplied in anticipation of trial demonstrate that the identified defect was slight and far off-center, inescapably showing that the ramp was fully functional for its intended use.  *See* Defendant's Exhibit 1.  There is no evidence that the MTA had notice of this defect, assuming it was a defect; indeed, plaintiff testified that during more than 100 visits to the headquarters, sometimes using the ramp, he neither noticed nor tripped over the board.  ¶¶ 42-44.

**DISCUSSION**

*Standard of Review*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor,* 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz,* 643 Fed.Appx. 54 (2d Cir. 2016), which discussion is incorporated by reference herein**.**  Within the last month, the Second Circuit, affirming the entry of summary judgment in a FELA case, issued a ruling particularly applicable to this matter:

3

**A004**

For the non-moving party to succeed, "there must be evidence on which the [court] could reasonably find" in the non-moving party's favor. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). "To defeat summary judgment, therefore, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." *Id.*

FELA provides that any railroad engaging in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. A plaintiff raising a FELA claim must prove the traditional common-law elements of negligence — duty, breach, foreseeability, and causation — though "the plaintiff's burden in making a showing of causation and negligence under FELA than it would be at common law." *Tufariello v. Long Island R. Co.,* 458 F.3d 80, 87 (2d Cir. 2006). "The test is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." *Ulfik v. Metro-N. Commuter R.R.,* 77 F.3d 54, 58 (2d Cir. 1996). Still, "[w]hile there is a considerably more relaxed standard of proof for determining negligence in FELA cases and a strong federal policy in favor of letting juries decide these cases, FELA does not make an employer strictly liable for workplace injuries and, therefore, requires that claimants must at least offer some evidence that would support a finding of negligence." *Sinclair v. Long Island R.R.,* 985 F.2d 74, 76-77 (2d Cir. 1993).

Under FELA, "[t]he touchstone of th[e] negligence inquiry is the issue of foreseeability — whether or not [the defendant] knew or should have known of the potential hazard." *Ulfik,* 77 F.3d at 58. To succeed on his FELA claim, [plaintiff] must show proof "of actual or constructive notice to the employer of the defective condition that caused the injury." *Sinclair,* 985 F.2d at 77.

*Batista v. Metro. Transportation Auth.*, 2022 WL 2442312, at *1–2 (2d Cir. July 5, 2022) (alterations omitted).

Here, there is absolutely no evidence of constructive or actual notice of a defect – even assuming this constitutes an actionable defect – to the defendant. Plaintiff's counsel has endeavored admirably to cobble together an argument that the MTA's failure to conduct ADA inspections of the ramp give rise to potential liability. This fails for several reasons. At a high level, under New York law, "proof of a violation of the ADA may only constitute evidence of negligence, not negligence per se." *Lugo v. St. Nicholas Assocs.*,

4

772 N.Y.S.2d 449, 455 (Sup. Ct. 2003), *aff'd*, 18 A.D.3d 341, 795 N.Y.S.2d 227 (2005); *see also Lettera v. Retail Prop. Tr.*, 2006 WL 196975, at *5 (E.D.N.Y. 2006) ("There is nothing in ADA, or in the interpretation of the statute by a New York court, that would suggest its draftsmen intended to depart from traditional negligence principles and impose a new statutory duty on building owners. Nor has the New York State Legislature seen fit to expand the scope of a building owner's duty beyond that of the common law in this respect.").

Yet there's more: while the failure to conduct an ADA inspection represents *some* evidence of negligence under certain circumstance, the focus here must be on the nature of that evidence. "[W]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury. Of course, in some instances, the trivial nature of the defect may loom larger than another element. Not every injury allegedly caused by an elevated brick or slab need be submitted to a jury." *Trincere v. Cnty. of Suffolk*, 90 N.Y.2d 976, 977 (1997) (internal quotation marks and citations omitted). Here, given the size[1] and nature of the defect – an extremely small differential near the edge of the ramp – the notion that an ADA inspection would have provided notice of the defect falls into the impermissible realm of "unsubstantiated speculation," which cannot defeat summary judgment. *Batista*, 2022 WL 2442312, at *1–2.

---

[1] The MTA argues that a defect of less than one inch, *per se*, represents an inactionable hazard, a notion that finds support in some cases. *See, e.g.*, *Natijehbashem v. United States*, 828 F. Supp. 2d 499, 506–07 (E.D.N.Y. 2011) (granting summary judgment because alleged defect of at most one inch between concrete and asphalt surface was "too trivial to be actionable as a matter of law"). The Court declines to adopt this blanket rule. *Trincere v. Cnty. of Suffolk*, 90 N.Y.2d at 977 ("There is no rule that municipal liability, in a case involving minor defects in the pavement, 'turns upon whether the hole or depression, causing the pedestrian to fall, is four inches—or any other number of inches—in depth.'") (citation omitted).

As such, I find that, on the undisputed facts, there is no competent evidence that could reasonably establish that defendant had actual or constructive notice of the operative defect.  Therefore, the Court reconsiders its previous ruling, and must enter summary judgment in favor of defendant.

**CONCLUSION**

The Clerk of the Court is directed to enter judgment consistent with this Order and close the case.


**SO ORDERED.**

Dated: Central Islip, New York
      August 4, 2022

/s/ Gary R. Brown<br>GARY R. BROWN<br>United States District Judge

**A007**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
JOHN W. KOWALCHUCK, JR.,

                 Plaintiff,

       - against -

METROPOLITAN TRANSPORTATION
AUTHORITY,

                 Defendant.
-----------------------------------------------------------X

**JUDGMENT**
CV 17-2146 (GRB) (SIL)

     A Memorandum of Decision and Order of Honorable Gary R. Brown, United States District Judge, having been filed on August 4, 2022, reconsidering its previous ruling and entering summary judgment in favor of defendant, and directing the Clerk of the Court to enter judgment consistent with the August 4, 2022 Memorandum of Decision and Order and close the case, it is

     **ORDERED AND ADJUDGED** that plaintiff John W. Kowalchuck, Jr., take nothing of defendant Metropolitan Transportation Authority; that the Court reconsiders its previous ruling; that summary judgment is entered in favor of defendant; and that this case is closed.

Dated: August 5, 2022
       Central Islip, New York

                           BRENNA B. MAHONEY
                           CLERK OF COURT

               BY:     /s/ JAMES J. TORITTO
                           DEPUTY CLERK

**A008**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

JOHN W. KOWALCHUCK, JR.,

                         Plaintiffs,                    **NOTICE OF APPEAL**

   -against-                                    17 Civ. 2146 (GRB)

METROPOLITAN TRANSPORTATION
AUTHORITY,

                         Defendant.
--------------------------------------------------------X

       Notice is hereby given that JOHN KOWALCHUCK, JR., Plaintiff above named, hereby

appeals to the United States Court of Appeals for the Second Circuit from the final judgment

entered in this action on the 5th day of August, 2022 and from the Opinion and Order of the Hon.

Gary R. Brown, filed on August 4, 2022.

Dated:  Rockville Centre, New York
        August 31, 2022

                                     *Philip J. Dinhofer*

                                    By: Philip J. Dinhofer, #6940
                                    **PHILIP J. DINHOFER, LLC**
                                    Attorneys for Plaintiff(s)
                                    77 N. Centre Ave. - Suite 311
                                    Rockville Centre, NY 11570
                                    516-678-3500

TO:   Helene R. Hechtkopf, Esq.
      HOGUET NEWMAN REGAL & KENNEY, LLP
      Attorneys for Defendant
      One Grand Central Place
      60 East 42nd Street, 48th Floor
      New York, New York 10165
      212-689-8808
      (Via ECF)

**A009**

**CA02db Intake**

| | |
|---|---|
| **From:** | ecf_bounces@nyed.uscourts.gov |
| **Sent:** | Thursday, September 1, 2022 9:28 AM |
| **To:** | nobody@nyed.uscourts.gov |
| **Subject:** | Activity in Case 2:17-cv-02146-GRB-SIL Kowalchuck v. Metropolitan Transportation Authority Electronic Index to Record on Appeal |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of New York**

### Notice of Electronic Filing

The following transaction was entered on 9/1/2022 at 9:27 AM EDT and filed on 9/1/2022

| | |
|---|---|
| **Case Name:** | Kowalchuck v. Metropolitan Transportation Authority |
| **Case Number:** | [2:17-cv-02146-GRB-SIL](#) |
| **Filer:** | |
| **WARNING: CASE CLOSED on 08/05/2022** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Electronic Index to Record on Appeal sent to US Court of Appeals. [58] Notice of Appeal; Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Landow, Concetta)**

**2:17-cv-02146-GRB-SIL Notice has been electronically mailed to:**

Philip Jay Dinhofer    pjdllc2806@yahoo.com, phildinhofer@hotmail.com

Helene R Hechtkopf    hhechtkopf@hnrklaw.com

Jason Douglas Barnes    jabarnes@mtahq.org, jason.douglas.barnes@gmail.com

Alison K. Ward    award@hnrklaw.com

Iricel Elizabeth Payano    ipayano@hnrklaw.com

**2:17-cv-02146-GRB-SIL Notice will not be electronically mailed to:**

A010

# A011

APPEAL,ACO

## U.S. District Court
## Eastern District of New York (Central Islip)
## CIVIL DOCKET FOR CASE #: 2:17−cv−02146−GRB−SIL

Kowalchuck v. Metropolitan Transportation Authority
Assigned to: Judge Gary R. Brown
Referred to: Magistrate Judge Steven I. Locke
Demand: $5,000,000
Cause: 45:51 Railways: Fed. Employer's Liability Act

Date Filed: 04/08/2017
Date Terminated: 08/05/2022
Jury Demand: Plaintiff
Nature of Suit: 330 Federal Employer's
Liability
Jurisdiction: Federal Question

**Plaintiff**

**John W. Kowalchuck, Jr.**

represented by **Philip Jay Dinhofer**
Philip J. Dinhofer, LLC
77 N. Centre Ave. − Suite 311
Rockville Centre, NY 11570
(516) 678−3500
Fax: (516) 678−4235
Email: pjdllc2806@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Metropolitan Transportation Authority**

represented by **Alison K. Ward**
Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 E 42nd St
New York, NY 10165
212−689−8808
Email: award@hnrklaw.com
*ATTORNEY TO BE NOTICED*

**David C Hollander**
Hoguet Newman Regal & Kenney
One Grand Central Place
60 East 42nd Street
New York, Ste 48th Floor
New York, NY 10165
212−689−8808
Email: dhollander@hnrklaw.com
*TERMINATED: 11/16/2020*
*ATTORNEY TO BE NOTICED*

**Helene R Hechtkopf**
Hoguet Newman Regal & Kenney, LLP
60 East 42nd Street
48th Floor
New York, NY 10165
212−689−8808
Email: hhechtkopf@hnrklaw.com
*ATTORNEY TO BE NOTICED*

**Iricel Elizabeth Payano**
Dechert LLP − New York, NY
1 Bush St
Ste #1600
San Francisco, CA 94104
646−709−8666
Email: ipayano@hnrklaw.com

*ATTORNEY TO BE NOTICED*

**Jason Douglas Barnes**
Metropolitan Transportation Authority
2 Broadway, 4th Floor
New York, NY 10004
212−878−7215
Fax: 212−878−7398
Email: jabarnes@mtahq.org
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/08/2017 | 1 | COMPLAINT against Metropolitan Transportation Authority Was the Disclosure Statement on Civil Cover Sheet completed −Yes,, filed by John W. Kowalchuck, Jr. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons) (Flanagan, Doreen) Modified on 4/14/2017 (Flanagan, Doreen). (Entered: 04/14/2017) |
| 04/08/2017 | | FILING FEE: $ 400.00, receipt number 0207−9434661 (Flanagan, Doreen) (Entered: 04/14/2017) |
| 04/13/2017 | 2 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made. (Davis, Kimberly) (Additional attachment(s) added on 4/14/2017: # 1 Additional Quality Control Check Sheet) (Flanagan, Doreen). Modified on 4/14/2017 (Flanagan, Doreen). (Entered: 04/13/2017) |
| 04/13/2017 | 3 | Proposed Summons. by John W. Kowalchuck, Jr. (Dinhofer, Philip) Modified on 4/14/2017 (Flanagan, Doreen). (Entered: 04/13/2017) |
| 04/14/2017 | | Incorrect Case Entry Information. Deleted Defendant Metropolitan Transportation Authority/Police Department; added Defendant Metropolitan Transportation Authority to conform to the Complaint. Deleted Document Entry No. 1 and re−entered as against Defendant. (Flanagan, Doreen) (Entered: 04/14/2017) |
| 04/14/2017 | | Case Assigned to Judge Arthur D. Spatt and Magistrate Judge Steven I. Locke. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Flanagan, Doreen) (Entered: 04/14/2017) |
| 04/14/2017 | 4 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. **Do NOT return or file the consent unless all parties have signed the consent.** (Flanagan, Doreen) (Entered: 04/14/2017) |
| 04/14/2017 | 5 | Summons Issued as to Metropolitan Transportation Authority. (Flanagan, Doreen) (Entered: 04/14/2017) |
| 04/20/2017 | 6 | WAIVER OF SERVICE Returned Executed by John W. Kowalchuck, Jr. Metropolitan Transportation Authority waiver sent on 4/14/2017, answer due 6/13/2017. (Dinhofer, Philip) (Entered: 04/20/2017) |
| 06/07/2017 | 7 | ANSWER to 1 Complaint, by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 06/07/2017) |
| 06/20/2017 | 8 | INITIAL CONFERENCE ORDER: An initial conference has been scheduled for August 7, 2017 in Courtroom 820 before Magistrate Judge Steven I. Locke. See order and attachments. Ordered by Magistrate Judge Steven I. Locke on 6/20/2017. (Attachments: # 1 SIL Individual Rules, # 2 Scheduling Order Worksheet) (Gandiosi, Kristin) (Entered: 06/21/2017) |

| 06/22/2017 | 9 | First MOTION to Adjourn Conference by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 06/22/2017) |
|---|---|---|
| 06/23/2017 | | Electronic ORDER granting DE 9 , Motion to Adjourn Conference. On consent, the Initial Conference previously scheduled for August 7, 2017 is hereby adjourned to August 14, 2017 at 10:00 a.m. So Ordered by Magistrate Judge Steven I. Locke on 6/23/2017. (Perri, Anthony). (Entered: 06/23/2017) |
| 08/04/2017 | | Electronic SCHEDULING ORDER: Due to a change in the Court's calendar, the initial conference previously scheduled for 8/14/2017 is hereby adjourned to 8/29/2017 at 10:00 a.m. So Ordered by Magistrate Judge Steven I. Locke on 8/4/2017. (Perri, Anthony) (Entered: 08/04/2017) |
| 08/09/2017 | 10 | Second MOTION to Adjourn Conference by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 08/09/2017) |
| 08/18/2017 | | Electronic ORDER granting DE 10 , Motion to Adjourn Conference. On consent the August 29, 2017 Conference is hereby adjourned to October 10, 2017 at 10:30 a.m. So Ordered by Magistrate Judge Steven I. Locke on 8/18/2017. (Perri, Anthony) (Entered: 08/18/2017) |
| 10/06/2017 | 11 | Proposed Scheduling Order by Metropolitan Transportation Authority (Hechtkopf, Helene) (Entered: 10/06/2017) |
| 10/10/2017 | 12 | Minute Order for proceedings held before Magistrate Judge Steven I. Locke:Initial Conference Hearing held on 10/10/2017. A scheduling order has been entered. (Gandiosi, Kristin) (Entered: 10/10/2017) |
| 10/10/2017 | 13 | SCHEDULING ORDER: Discovery deadlines set; see attached order. Next Status Conference set for 2/5/2018 at 10:30 AM in Courtroom 820 before Magistrate Judge Steven I. Locke. Ordered by Magistrate Judge Steven I. Locke on 10/10/2017. (Gandiosi, Kristin) (Entered: 10/10/2017) |
| 12/15/2017 | 14 | NOTICE of Appearance by Jason Douglas Barnes on behalf of Metropolitan Transportation Authority (aty to be noticed) (Barnes, Jason) (Entered: 12/15/2017) |
| 02/05/2018 | 15 | Minute Order for proceedings held before Magistrate Judge Steven I. Locke:Status Conference held on 2/5/2018. The Final Pretrial Conference is set for 10/10/2018 at 10:30 a.m. in courtroom 820 of the Central Islip courthouse. A joint proposed pretrial order must be electronically filed three days prior to this conference. So Ordered by Magistrate Judge Steven I. Locke on 2/5/2018. (FTR Log #10:46−10:48.) (Vissichelli, Eric) (Entered: 02/05/2018) |
| 06/15/2018 | 16 | MOTION for Extension of Time to Complete Discovery by John W. Kowalchuck, Jr. (Dinhofer, Philip) (Entered: 06/15/2018) |
| 06/25/2018 | | Electronic ORDER granting DE 16 Motion for Extension of Time to Complete Discovery. Without opposition, Plaintiff's request to extend the outstanding discovery deadlines in this matter by 120 days is granted as follows: (i) the deadline for completion of depositions is extended to 8/13/2018; (ii) the deadline for identification of case−in−chief experts is extended to 9/11/2018; (iii) the deadline for service of Rule 26 disclosures is extended to 10/29/2018; (iv) the deadline for identification of rebuttal experts and service of Rule 26 disclosures is extended to 11/19/2018; and (v) the deadline for commencement of summary judgment motion practice is extended to 1/18/2019. The final pretrial conference previously scheduled for 10/10/2018 has been adjourned to 1/30/2019 at 10:30 a.m. in courtroom 820 of the Central Islip courthouse. A status conference is set for 9/25/2018 at 10:30 a.m. Ordered by Magistrate Judge Steven I. Locke on 6/25/2018. (Vissichelli, Eric) (Entered: 06/25/2018) |
| 09/25/2018 | 17 | Minute Order for proceedings held before Magistrate Judge Steven I. Locke:Status Conference held on 9/25/2018. No appearance from plaintiff. The Status Conference has been adjourned to 10/2/2018 at 10:00 AM in Courtroom 820 before Magistrate Judge Steven I. Locke. (Gandiosi, Kristin) (Entered: 09/25/2018) |
| 10/02/2018 | 18 | Minute Order for for proceedings held before Magistrate Judge Steven I. Locke: Status Conference held on 10/2/2018. An amended Scheduling Order has been entered. Ordered by Magistrate Judge Steven I. Locke on 10/2/2018. (FTR Log #10:25−10:30) (Kantor, Jesse) (Entered: 10/02/2018) |

| 10/02/2018 | 19 | SCHEDULING ORDER: Discovery deadlines set; see attached order. Final Pretrial Conference set for 3/20/2019 at 10:30 a.m. before Magistrate Judge Steven I. Locke in courtroom 820 of the Central Islip courthouse. Ordered by Magistrate Judge Steven I. Locke on 10/2/2018. (Kantor, Jesse) (Entered: 10/02/2018) |
|---|---|---|
| 12/16/2018 | 20 | MOTION to Stay by John W. Kowalchuck, Jr. (Dinhofer, Philip) (Entered: 12/16/2018) |
| 12/31/2018 | | Electronic ORDER granting DE 20 Motion to Stay. Without opposition, and in light of the representations in DE 20 , Plaintiff's motion to stay all deadlines in this matter is granted. Accordingly, the pretrial conference scheduled for 3/20/2019 is adjourned sine die. Plaintiff is directed to file a status report on or before 4/15/2019. Ordered by Magistrate Judge Steven I. Locke on 12/31/2018. (Vissichelli, Eric) (Entered: 12/31/2018) |
| 04/15/2019 | 21 | MOTION for Extension of Time to Complete Discovery by John W. Kowalchuck, Jr. (Dinhofer, Philip) (Entered: 04/15/2019) |
| 04/26/2019 | | Electronic ORDER granting DE 21 Motion for Extension of Time to Complete Discovery. On consent, and in light of the representations made in DE 21 , Plaintiff's motion to stay all discovery deadlines in this matter is granted. A status conference is set for 9/24/2019 at 11:00 a.m. before Magistrate Judge Steven I. Locke in courtroom 820 of the Central Islip Courthouse. Ordered by Magistrate Judge Steven I. Locke on 4/26/2019. (Georgescu, Dora) (Entered: 04/26/2019) |
| 09/24/2019 | 22 | Minute Order for proceedings held before Magistrate Judge Steven I. Locke:Status Conference held on 9/24/2019. Next Status Conference set for 11/25/2019 at 10:00 AM in Courtroom 820 before Magistrate Judge Steven I. Locke. (Gandiosi, Kristin) (Entered: 09/24/2019) |
| 11/22/2019 | 23 | MOTION to Adjourn Conference by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 11/22/2019) |
| 11/25/2019 | | Electronic ORDER granting DE 23 Motion to Adjourn Conference. On consent, the status conference currently scheduled for 11/25/2019 is cancelled. Defendant is directed to serve its Local Rule 56.1 statement on or before 12/20/2019, Plaintiff is directed to serve its Local Rule 56.1 counter−statement on or before 1/20/2020, and Defendant is directed to file its summary judgment pre−motion conference letter on or before 2/6/2020. A final pretrial conference before Magistrate Judge Steven I. Locke is set for 2/25/2020 at 10:30 a.m. in courtroom 820 of the Central Islip courthouse. Ordered by Magistrate Judge Steven I. Locke on 11/25/2019. (Georgescu, Dora) (Entered: 11/25/2019) |
| 01/23/2020 | | Case reassigned to Judge Gary R. Brown. Judge Arthur D. Spatt no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Russo, Eric) (Entered: 01/23/2020) |
| 02/05/2020 | 24 | MOTION for pre motion conference by Metropolitan Transportation Authority. (Attachments: # 1 Exhibit Parties' combined proposed Local Rule 56.1 statements and responses) (Hechtkopf, Helene) (Entered: 02/05/2020) |
| 02/06/2020 | | ELECTRONIC ORDER granting 24 Motion for Pre Motion Conference. A pre−motion conference has been scheduled for March 2, 2020 at 10:30 a.m. before the undersigned in Courtroom 840 of the Central Islip Courthouse at which time the parties should be prepared to address defendant's anticipated summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Before requesting an adjournment, the parties shall meet and confer and submit a joint letter with several proposed dates. Ordered by Judge Gary R. Brown on 2/6/2020. c/ecf (Johnston, Linda) (Entered: 02/06/2020) |
| 02/10/2020 | 25 | MOTION to Adjourn Conference by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 02/10/2020) |
| 02/11/2020 | | SCHEDULING ORDER granting 25 Motion to Adjourn Conference. A pre−motion conference has been ADJOURNED TO March 6, 2020 at 10:30 a.m. before the undersigned in Courtroom 840 of the Central Islip Courthouse at which time the |

| | | |
|---|---|---|
| | | parties should be prepared to address defendant's anticipated summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Ordered by Judge Gary R. Brown on 2/11/2020. C/ECF (Johnston, Linda) (Entered: 02/11/2020) |
| 02/24/2020 | 26 | MOTION to Adjourn Conference *Motion to adjourn final pretrial conference until after summary judgment motion is decided* by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 02/24/2020) |
| 02/25/2020 | | Electronic ORDER granting DE 26 Motion to Adjourn Conference. On consent, the pretrial conference currently scheduled for 2/25/2020 is adjourned sine die. The parties are directed to file a joint status report within ten days of the disposition of forthcoming dispositive motion practice. Ordered by Magistrate Judge Steven I. Locke on 2/25/2020. (Georgescu, Dora) (Entered: 02/25/2020) |
| 02/26/2020 | 27 | NOTICE of Appearance by David C Hollander on behalf of Metropolitan Transportation Authority (aty to be noticed) (Hollander, David) (Entered: 02/26/2020) |
| 03/06/2020 | 28 | Minute Entry for proceedings held before Judge Gary R. Brown: Type of Conference: Pre Motion Conference held on 3/6/2020. Counsel for all sides present. Pre−motion conference held. Motion argued. Decision Other: The Court deems the motion having been made and finds there are sufficient issues of fact to be determined by a jury. Jury selection and trial set for 6/1/2020 at 9:30 a.m. before Judge Brown. Joint pretrial order due within 30 days. Jury Selection set for 6/1/2020 at 9:30AM before Judge Gary R. Brown., Jury Trial set for 6/1/2020 at 9:30AM before Judge Gary R. Brown. (FTR Log #10:38−10:55; 11:02−11:09.) (Valle, Christine) (Entered: 03/06/2020) |
| 03/25/2020 | 29 | Letter *re: Trial Status* by John W. Kowalchuck, Jr (Dinhofer, Philip) (Entered: 03/25/2020) |
| 03/26/2020 | | ORDER re 29 Letter filed by John W. Kowalchuck, Jr. At this time, the trial remains scheduled subject to any further government directives.Ordered by Judge Gary R. Brown on 3/26/2020.c/ecf (Johnston, Linda) (Entered: 03/26/2020) |
| 04/06/2020 | 30 | Letter *submitting Defendant's Pretrial Order* by Metropolitan Transportation Authority, Proposed Pretrial Order by Metropolitan Transportation Authority (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B − Defendant's Pre−Trial Order) (Hechtkopf, Helene) (Entered: 04/06/2020) |
| 04/07/2020 | | ORDER re 30 Letter,, Proposed Pretrial Order, filed by Metropolitan Transportation Authority. Defendant's proposed pretrial order is rejected as it fails to comply with the undersigned's individual rules for a proposed "Joint" pretrial order. The parties are directed to confer and submit a proposed joint pretrial order in compliance with the Court's individual rules by May 7, 2020. Ordered by Judge Gary R. Brown on 4/7/2020.c/ecf (Johnston, Linda) (Entered: 04/07/2020) |
| 04/07/2020 | 31 | Letter MOTION for Extension of Time to File *Joint Pre−Trial Order* by John W. Kowalchuck, Jr. (Dinhofer, Philip) (Entered: 04/07/2020) |
| 04/07/2020 | 32 | Letter *withdrawing as Moot, Letter Motion, Docket #31* by John W. Kowalchuck, Jr (Dinhofer, Philip) (Entered: 04/07/2020) |
| 04/08/2020 | | ORDER finding as moot 31 Motion for Extension of Time to File. *See* DE 32. Ordered by Judge Gary R. Brown on 4/8/2020. c/ecf (Johnston, Linda) (Entered: 04/08/2020) |
| 04/14/2020 | 33 | MOTION to Compel *or Indorse Subpoena "So Ordered"* by John W. Kowalchuck, Jr. (Attachments: # 1 Exhibit Subpoena) (Dinhofer, Philip) (Entered: 04/14/2020) |
| 04/15/2020 | 34 | ORDER granting 33 Motion to Compel. Plaintiff's subpoena dated 4/12/2020 to State of New York, Workers' Compensation Board is hereby So Ordered. In light of the current public health emergency, this Order will serve as the endorsement thereupon by the Court. Ordered by Judge Gary R. Brown on 4/15/2020. (McMorrow, Karen) (Entered: 04/15/2020) |
| 04/22/2020 | | SCHEDULING ORDER: In light of Chief Judge Roslynn R. Mauskopf's April 21, 2020 Administrative Order 2020−15 IN RE: CORONA VIRUS/COVID−19 PANDEMIC ordering "All civil and criminal petit jury selections and jury trials scheduled to commence between April 27, 2020 and June 15, 2020, and all grand jury selections scheduled before June 15, 2020, are continued pending further Order of the |

| | | |
|---|---|---|
| | | Court." <u>The June 1, 2020 jury selection and trial are adjourned.</u> A Telephone Conference is set for 6/1/2020 at 11:00 AM before Judge Gary R. Brown. The parties will **call 888−363−4734 using Access code 4132441** at least 5 minutes prior to the conference. Please note any number of counsel may appear during the telephone conference, however only one attorney per party may be designated to speak during the conference.Ordered by Judge Gary R. Brown on 4/22/2020. (McMorrow, Karen) (Entered: 04/22/2020) |
| 05/07/2020 | <u>35</u> | Letter MOTION for Extension of Time to File *PTO* by John W. Kowalchuck, Jr. (Dinhofer, Philip) (Entered: 05/07/2020) |
| 05/08/2020 | | ORDER granting <u>35</u> Motion for Extension of Time to File. Plaintiff's request, on consent, that the deadline for the submission of the pre−trial order be adjourned to a date to be set during the June 1, 2020 telephone conference is granted. Ordered by Judge Gary R. Brown on 5/8/2020. c/ecf (Johnston, Linda) (Entered: 05/08/2020) |
| 06/01/2020 | <u>36</u> | Minute Entry for proceedings held on 6/1/2020 before Judge Gary R. Brown: Civil Cause for Telephone Status Conference. Counsel for Plaintiff: Philip Jay Dinhofer. Counsel for Defendant: David C. Hollander, Helene R. Hechtkopf, Jason Douglas Barnes. FTR #: 11:08−11:17, AT&T Conference. A status letter will be due by 6/17/2020. (Tirado, Chelsea) (Entered: 06/01/2020) |
| 06/17/2020 | <u>37</u> | Letter *regarding trial format* by Metropolitan Transportation Authority (Hechtkopf, Helene) (Entered: 06/17/2020) |
| 10/09/2020 | | SCHEDULING ORDER: Telephone Conference set for 1/5/2021 at 11:00 AM in Courtroom 940 before Judge Gary R. Brown. The parties will call 888−363−4734 using Access code 4132441 at least 5 minutes prior to the conference. Please note any number of counsel may appear during the telephone conference, however only one attorney per party may be designated to speak during the conference.Ordered by Judge Gary R. Brown on 10/9/2020. (McMorrow, Karen) (Entered: 10/09/2020) |
| 11/13/2020 | <u>38</u> | MOTION to Withdraw as Attorney *David C. Hollander* by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 11/13/2020) |
| 11/13/2020 | <u>39</u> | AFFIDAVIT/DECLARATION in Support re <u>38</u> MOTION to Withdraw as Attorney *David C. Hollander* filed by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 11/13/2020) |
| 11/13/2020 | <u>40</u> | MOTION to Withdraw as Attorney *David C. Hollander* by Metropolitan Transportation Authority. (Hollander, David) (Entered: 11/13/2020) |
| 11/13/2020 | <u>41</u> | AFFIDAVIT/DECLARATION in Support re <u>40</u> MOTION to Withdraw as Attorney *David C. Hollander* filed by Metropolitan Transportation Authority. (Hollander, David) (Entered: 11/13/2020) |
| 11/16/2020 | | Electronic ORDER granting DE <u>38</u> Motion to Withdraw as Attorney. Attorney David C. Hollander is hereby terminated as counsel for Defendant. Ordered by Magistrate Judge Steven I. Locke on 11/16/2020. (Reilly, Megan) (Entered: 11/16/2020) |
| 01/05/2021 | <u>42</u> | Minute Entry for proceedings held on 1/5/2021 before Judge Gary R. Brown: Civil Cause for Telephone Status Conference. Counsel for Plaintiff: Philip Jay Dinhofer. Counsel for Defendant: Helene R. Hechtkopf. FTR #: 11:25−11:40. Joint pretrial order due by 4/30/2021. Case placed on the trial ready calendar. (Tirado, Chelsea) (Entered: 01/06/2021) |
| 04/30/2021 | <u>43</u> | Proposed Pretrial Order by John W. Kowalchuck, Jr (Dinhofer, Philip) (Entered: 04/30/2021) |
| 05/04/2021 | | PRETRIAL ORDER re <u>43</u> Proposed Pretrial Order filed by John W. Kowalchuck, Jr.. The parties' Proposed Pretrial Order substantially complies with Court's individual rules and is approved for filing. Ordered by Judge Gary R. Brown on 5/4/2021. c/ecf (Johnston, Linda) (Entered: 05/04/2021) |
| 05/10/2021 | | ORDER : The parties were notified that the court was placing this case on a trial ready calendar with a minimum of 48hours notice before scheduling the case for trial. A criminal jury selection before the undersigned was scheduled for May 17, 2021 and has recently been adjourned. This civil case is now scheduled for jury selection and |

| | | trial to begin on May 17, 2021 at 9:30 a.m., in the Ceremonial Courtroom, Central Islip Courthouse. Ordered by Judge Gary R. Brown on 5/10/2021. (McMorrow, Karen) (Entered: 05/10/2021) |
|---|---|---|
| 05/10/2021 | 44 | MOTION to Adjourn Conference *Motion to Adjourn Trial* by John W. Kowalchuck, Jr. (Dinhofer, Philip) (Entered: 05/10/2021) |
| 05/11/2021 | 45 | MOTION to Appear by Telephone *Request for witness at trial to appear remotely* by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 05/11/2021) |
| 05/11/2021 | 46 | RESPONSE in Opposition re 45 MOTION to Appear by Telephone *Request for witness at trial to appear remotely* filed by John W. Kowalchuck, Jr. (Dinhofer, Philip) (Entered: 05/11/2021) |
| 05/12/2021 | | ORDER granting 44 Motion to Adjourn Trial. A Status Conference is set for 9/24/2021 at 02:00 PM in Courtroom 940 before Judge Gary R. Brown. Order finding as moot 45 Motion to Appear by Telephone Ordered by Judge Gary R. Brown on 5/12/2021. (McMorrow, Karen) (Entered: 05/12/2021) |
| 05/21/2021 | | ORDER finding as moot 40 Motion to Withdraw as Attorney. See Electronic Order dated 11/16/20. Ordered by Judge Gary R. Brown on 5/21/2021. c/ecf (Johnston, Linda) (Entered: 05/21/2021) |
| 09/13/2021 | | SCHEDULING ORDER: Due to a conflict in the court's calendar the 9/24/2021 Telephone Conference is rescheduled for 1/7/2022 at 02:00 PM before Judge Gary R. Brown. 888−363−4734 Access Code 4132441. Ordered by Judge Gary R. Brown on 9/13/2021. (McMorrow, Karen) (Entered: 09/13/2021) |
| 09/13/2021 | 47 | NOTICE of Appearance by Iricel Elizabeth Payano on behalf of Metropolitan Transportation Authority (aty to be noticed) (Payano, Iricel) (Entered: 09/13/2021) |
| 01/07/2022 | 48 | NOTICE of Appearance by Alison K. Ward on behalf of Metropolitan Transportation Authority (aty to be noticed) (Ward, Alison) (Entered: 01/07/2022) |
| 01/07/2022 | | Minute Entry for proceedings held before Judge Gary R. Brown:Telephone Conference held on 1/7/2022. Counsel for all sides present. Status letter due within 2 weeks. (FTR Log #2:08−2:15.) (McMorrow, Karen) (Entered: 01/07/2022) |
| 01/21/2022 | 49 | Letter by John W. Kowalchuck, Jr (Dinhofer, Philip) (Entered: 01/21/2022) |
| 01/25/2022 | | ORDER re 49 Letter filed by John W. Kowalchuck, Jr. The parties are directed to confer and electronically file a joint letter setting forth three proposed dates in which to schedule the bench trial, beginning mid May 2022.Ordered by Judge Gary R. Brown on 1/25/2022. c/ecf (Johnston, Linda) (Entered: 01/25/2022) |
| 02/08/2022 | 50 | Letter by John W. Kowalchuck, Jr (Dinhofer, Philip) (Entered: 02/08/2022) |
| 02/08/2022 | 51 | MOTION for Extension of Time to File *Joint Pre−Trial Order* by John W. Kowalchuck, Jr. (Dinhofer, Philip) (Entered: 02/08/2022) |
| 02/09/2022 | | ORDER: Bench Trial set for 6/20/2022 at 10:00 AM in Courtroom 940 before Judge Gary R. Brown.Ordered by Judge Gary R. Brown on 2/9/2022. (McMorrow, Karen) (Entered: 02/09/2022) |
| 02/09/2022 | | ORDER withdrawing 51 Motion for Extension of Time to File. Docket Entry DE 51 was erroneously docketed in this case. Ordered by Judge Gary R. Brown on 2/9/2022. c/ecf (Johnston, Linda) (Entered: 02/09/2022) |
| 04/20/2022 | | NOTICE of Change of Hearing: Due to the federal holiday and the court being unavailable numerous days during the week of June 20th, the Bench Trial is rescheduled to start on 6/27/2022 at 09:30 AM in Courtroom 940 before Judge Gary R. Brown. (McMorrow, Karen) (Entered: 04/20/2022) |
| 04/29/2022 | 52 | MOTION to Continue *Request to change trial date* by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 04/29/2022) |
| 05/02/2022 | | ORDER granting 52 Motion to Continue. The Bench Trial is rescheduled to start on 8/8/2022 at 09:30 AM in Courtroom 940 before Judge Gary R. Brown. Ordered by Judge Gary R. Brown on 5/2/2022. c/ecf (Johnston, Linda) (Entered: 05/02/2022) |

| 07/14/2022 | 53 | Letter *re: Joint Request to Permit Expert Testimony by Video* by Metropolitan Transportation Authority (Hechtkopf, Helene) (Entered: 07/14/2022) |
|---|---|---|
| 07/18/2022 | | ORDER re 53 Letter filed by Metropolitan Transportation Authority. The parties' request to present medical expert testimony by pre−recorded video in the upcoming August 8, 2022 bench trial of this matter is hereby Granted. Ordered by Judge Gary R. Brown on 7/18/2022. c/ecf (Johnston, Linda) (Entered: 07/18/2022) |
| 07/25/2022 | 54 | MOTION in Limine by Metropolitan Transportation Authority. (Hechtkopf, Helene) (Entered: 07/25/2022) |
| 07/26/2022 | 55 | Letter by John W. Kowalchuck, Jr (Dinhofer, Philip) (Entered: 07/26/2022) |
| 08/04/2022 | 56 | MEMORANDUM OF DECISION & ORDER: The Clerk of the Court is directed to enter judgment consistent with this Order and close the case. So Ordered by Judge Gary R. Brown on 8/4/2022. (Jakubowski, Laura) (Entered: 08/04/2022) |
| 08/05/2022 | 57 | CLERK'S JUDGMENT: ORDERED AND ADJUDGED that plaintiff John W. Kowalchuck, Jr., take nothing of defendant Metropolitan Transportation Authority; that the Court reconsiders its previous ruling; that summary judgment is entered in favor of defendant; and that this case is closed. Ordered by Clerk of Court on 8/5/2022. (Toritto, Jim) (Entered: 08/05/2022) |
| 08/31/2022 | 58 | NOTICE OF APPEAL as to 57 CLERKS JUDGMENT by John W. Kowalchuck, Jr. Filing fee $ 505, receipt number ANYEDC−15897253. (Attachments: # 1 Exhibit Decision Appealed, # 2 Exhibit Judgment Appealed) (Dinhofer, Philip) Modified on 9/1/2022 (Landow, Concetta). (Entered: 08/31/2022) |
| 09/01/2022 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 58 Notice of Appeal; Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Landow, Concetta) (Entered: 09/01/2022) |

**A019**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN W. KOWALCHUCK, JR.,                                     13 CV 2146

                          Plaintiff,                         **COMPLAINT**

          -against-                                          **PLAINTIFF DEMANDS
                                                             TRIAL  BY  JURY**

METROPOLITAN TRANSPORTATION AUTHORITY,


                          Defendant.
------------------------------------------------------------------------X

   Plaintiff, JOHN W. KOWALCHUCK, JR., by his attorney, PHILIP J. DINHOFER, LLC,

complaining of the defendant, respectfully shows to this Court and alleges:

   1. The action herein arises under the Federal Employers' Liability Act (45 U.S.C. Sec. 5l,

et seq.), as hereinafter more fully appears.

   2. Upon information and belief and at all times herein mentioned, the defendant,

METROPOLITAN TRANSPORTATION AUTHORITY was a Public Authority, duly organized

and existing under and by virtue of the laws of the State of New York and authorized to do business

within the jurisdiction of this Court.

   3. At all time herein after, the defendant, METROPOLITAN TRANSPORTATION

AUTHORITY, was engaged in interstate commerce by rail and operated a system of railroads and

railroad yards within the jurisdiction of this court and in various states.

   4. That on or prior to January 27, 2015 the Defendant, METROPOLITAN

TRANSPORTATION AUTHORITY, employed the plaintiff, JOHN W. KOWALCHUCK, JR., as

a Police Officer, under its direction, control and in furtherance of its business in interstate

commerce.

A020

5.      That on and prior to January 27, 2015, the defendant, METROPOLITAN TRANSPORTATION AUTHORITY owned, leased, maintained, operated, controlled, supervised and/ or otherwise assigned its police officer's to work at a certain railroad property, more specifically the District 2, Police Headquarters located at 565 Commercial Ave., Garden City, New York, which included the tracks, rails, switches, sidings, train cars, roadbeds, buildings, structures, facilities and appurtenances thereto, over, through, upon which and/or substantially affecting the defendant's operation of its engines, trains and cars under its direction and control.

6.   That on or about January 27, 2015, while the plaintiff, JOHN W. KOWALCHUCK, JR., was in the performance of his duties as a Police Officer at or near the aforesaid location he was caused to sustain severe and disabling injuries by the reason of the negligence, carelessness and/or recklessness of the defendant as herein set forth.

7.   That on or about January 27, 2015 while in the course of his employment with the defendant the plaintiff was assigned to shovel snow that had accumulated upon the wooden wheelchair ramp that had been constructed at the entrance to the District 2, Police Headquarters located at 565 Commercial Ave., Garden City, New York.

8.   That on or about January 27, 2015 while shoveling snow at that location and as he was pushing the accumulated snow down the upper portion of the ramp away from the building's doorway towards the landing and turn leading to the upper end of the lower portion of the aforesaid wooden wheelchair ramp with a shovel provided to him by his employer, suddenly and without warning the shovel's forward momentum unexpectedly came to an abrupt unexpected stop, having become stuck and/or jammed upon an inappropriately raised section of the ramp's wooden planking thereby causing a strong unanticipated jolt to plaintiff's body and person as well as injury to develop at plaintiff's shoulder, neck and cervical spine and/or their supporting bones, muscles, tendons,

**A021**

cartilage, ligaments, discs, nerves, nerve roots and other such hard and soft tissues of the surrounding areas.

    9.   That the said accident and resulting injuries to the plaintiff were caused solely by reason of the negligence, carelessness and recklessness of the defendant, its agents, servants and/or employees' in failing to exercise due care and diligence; in failing to provide plaintiff with a safe place to work and safe equipment with which to work; in failing to promulgate safety rules and procedures for activities carried out by their personnel at the aforesaid place; in failing to warn plaintiff of the existence of the dangers involved in the performance of his duties as a Police Officer; in failing to provide the plaintiff with the necessary and proper manpower, tools and/or equipment with which to work; in failing to make proper and adequate provisions for the safety of plaintiff; in wrongfully assigning the plaintiff police officer to shovel snow at the aforesaid location; in failing to inspect, maintain and keep in good repair the premises and wooden wheelchair ramp at the entrance of the aforesaid location; in so constructing and/or permitting a section of the wooden planking of the wheelchair ramp situated at the entrance to defendant's premises aforementioned to become raised, misaligned and mis-leveled as compared to the other wooden planking situated thereat; in so constructing and/or permitting the wooden planking to be and remain at the aforesaid location in a raised, misaligned and mis-leveled state as compared to the other wooden planking situated thereat; in failing to foresee that a raised, misaligned and mis-leveled wooden plank, as compared to the other wooden planking comprising the said wheelchair ramp situated thereat, presents as a hazzard to those persons cleaning, shoveling, walking or otherwise making use of the said wheelchair ramp; in failing to appreciate, detect, take notice of, or cure the risks and dangers situated within its wooden wheelchair ramp at the aforesaid location, thereby causing and/or creating a menace, nuisance and/or trap to members of the general public at large, and/or more particularly the defendant's employees, including the plaintiff; in knowingly assigning and or permitting the

plaintiff to shovel the aforesaid wheelchair ramp without first warning him of the dangers of the aforementioned raised, misaligned and/or mis-leveled wooden plank situated thereat; in failing to inspect, maintain and keep in good repair the wooden planking of its wheelchair ramp situated at the aforesaid location; in failing to inspect, maintain and keep the aforesaid wheelchair ramp in good, proper, and safe condition in accordance with the provisions and standards promulgated by the Americans With Disabilities Act and/or the Rehabilitation Act of 1974; in failing to take heed of prior similar events; in that the defendant failed to promulgate and enforce proper and safe rules for the safe conduct of the work operations of the railroad and the defendant was otherwise generally negligent under the circumstances.

10.    That the said injuries were incurred while the plaintiff was acting in furtherance of interstate commerce, or in work substantially affecting the same.

11.    That the plaintiff, JOHN W. KOWALCHUCK, JR. was damaged thereby in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

WHEREFORE, plaintiff, JOHN W. KOWALCHUCK, JR., demands judgment against the defendant, METROPOLITAN TRANSPORTATION AUTHORITY, in the sum of FIVE MILLION ($5,000,000.00) DOLLARS, together with the costs and disbursements of this action.

Dated:  Rockville Centre, New York
       April 8, 2017

*Philip J. Dinhofer*

By: Philip J. Dinhofer, #6940
PHILIP J. DINHOFER, LLC
Attorneys for Plaintiff(s)
77 N. Centre Ave. - Suite 311
Rockville Centre, NY 11570
516-678-3500

TO:    Helene R. Hechtkopf, Esq.
       Attorneys for Defendant MTA
       Hoguet Newman Regal & Kenney, LLP
       10 E. 40th Street, 35th Floor
       New York, NY 10016
       212-689-8808
       (Service Via E-Mail On Counsel On Consent)

A023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN W. KOWALCHUK,

                                    Plaintiff,

                    -against-

METROPOLITAN TRANSPORTATION
AUTHORITY,

                                    Defendant.

Case No. 17 CV 2146 (ADS)(SIL)

**ANSWER**

Defendant Metropolitan Transportation Authority ("MTA"), by its undersigned counsel, Hoguet Newman Regal & Kenney, LLP, as and for its Answer to the Complaint, respectfully states as follows:

1.      Paragraph 1 contains legal conclusions to which no response is required.

2.      MTA admits the allegations in Paragraph 2.

3.      Paragraph 3 states legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in Paragraph 3, and further states that it is affiliated with entities, including the Long Island Rail Road that operate, a commuter railroad within the jurisdiction of this Court.

4.      MTA denies the allegations in Paragraph 4, but admits that MTA employed the Plaintiff as a Police Officer on January 27, 2015.

5.      Defendant denies the allegations in Paragraph 5, except that it admits that MTA Police Department Headquarters for District 2 is located at 565 Commercial Avenue in Garden City, New York.

6.      MTA denies the allegations in Paragraph 6.

1

**A024**

7.      MTA denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8.      MTA denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.      MTA denies the allegations in Paragraph 9.

10.      Paragraph 10 states a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in Paragraph 10

11.      MTA denies the allegations in Paragraph 11.

MTA denies the Wherefore clause in the Complaint.


## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

1.  The Complaint fails to state a claim upon which relief may be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

2.      This Court lacks subject matter jurisdiction over this action because the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq*., is not applicable to this action.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

3.      Whatever injuries and/or damages were sustained by the Plaintiff at the time and place alleged in the Complaint were in whole or in part the result of Plaintiff's own contributory negligence.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

4.      Whatever injuries and/or damages were sustained by the Plaintiff at the time and place alleged in the Complaint were in whole or in part caused by the Plaintiff's own culpable conduct and/or by the Plaintiff's want of care.

A025

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

5.     Any verdict in the within action for past, present and future medical care, dental care, custodial care, rehabilitation services, loss of earnings or other economic loss should be reduced by the amount that any such expense has or will with reasonable certainty be replaced or indemnified in whole or in part from any collateral source, in accordance with the provisions of Section 4545(c) of the New York Civil Practice Law and Rules.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

6.     Defendant's acts complained of were privileged because they were undertaken pursuant to MTA Police Department practice and procedure, and in accord with New York Public Authorities Law § 1266-h which authorizes and empowers Defendant to provide and maintain a police force to enforce and prevent violation of all laws and ordinances in and about all of its transportation facilities.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

7.     Defendant's acts complained of were privileged because they were mandated by statute in the course of the Defendant's business for which the Defendants have an absolute or qualified privilege.

3

**A026**

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays that judgment be entered as follows: Dismissing the Complaint in its entirety with prejudice; and granting such other and further relief as this Court deems just and proper.

Dated: June 7, 2017
      New York, New York

HOGUET NEWMAN REGAL & KENNEY, LLP

_____
Helene R. Hechtkopf (HH 7402)
Hoguet Newman Regal & Kenney, LLP
10 East 40th Street, 35th Floor
New York, NY 10016
Phone:  212-689-8808

*Counsel for Defendant Metropolitan
Transportation Authority*

4

A027



One Grand Central Place
60 East 42nd Street, 48th Floor
New York, New York 10165

Tel   212.689.8808
Fax   212.689.5101
www.hnrklaw.com

hhechtkopf@hnrklaw.com

February 5, 2020

<u>VIA ECF</u>

Hon. Gary R. Brown, U.S.D.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

**Re:   John W. Kowalchuk v. Metropolitan Transportation Authority, Civil No. 17-cv-2146**

Dear Judge Brown,

We represent the Defendant in the above action, and write pursuant to the Court's Individual Rules to respectfully request a pre-motion conference to discuss Defendant's anticipated summary judgment motion.

Plaintiff John Kowalchuk, a retired Metropolitan Transportation Authority ("MTA") Police Officer, brings this case under the Federal Employer Liability Act ("FELA"), alleging that he was injured while shoveling snow when his shovel hit a raised board on the wooden that ramp he was shoveling, reverberating up his arm and causing a shoulder injury. There are no material facts in dispute, as shown by Plaintiff's opposition to Defendant's Proposed Statement of Material Facts, attached to this letter as Exhibit 1.

"A FELA plaintiff must prove the traditional common law elements of negligence – duty, breach, damages, causation, and foreseeability." *Stevens v. Bangor & Aroostook R. Co.*, 97 F.3d 594, 598 (1st Cir. 1996). As briefly summarized below, Plaintiff is unable to prove duty, breach or foreseeability. Plaintiff's claim fails as a matter of law because MTA provided Plaintiff with a reasonably safe workplace, as FELA requires.

**MTA Provided Plaintiff With a Reasonably Safe Place to Work as a Police Officer**

The slight height differential between the planks on the ramp where Plaintiff alleges he was injured – 6/16 of an inch according to the Plaintiff (Pltf. Counter SOMF ¶ 2) – is insufficient to impose liability on the MTA. *See, e.g., Natijehbashem v United States*, 828 F. Supp. 2d 499, 507 (E.D.N.Y. 2011) ("Where the dangerous or defective condition alleged by a pedestrian is a height differential of approximately one inch (1″), New York courts, and courts applying New York law, generally grant summary judgment dismissing the case."); *Charney v. City of Wildwood,* 732 F. Supp. 2d 448, 456 (D.N.J. 2010), *aff'd,* 435 F. App'x 72 (3d Cir. 2011)

**A028**

Hon. Gary R. Brown, U.S.D.J.
February 5, 2020
Page 2



(granting summary judgment where the alleged injury resulted from a fall caused by a "one and one-half inch deep, one and one-quarter inch wide triangular hole" in a wooden boardwalk).

Nor was snow removal one of Plaintiff's job responsibilities or requirements – in fact, he admitted that he was not expected to remove snow at all, and this was the only time he had done so. Because snow removal on the ramp was not a "normal requirement" of Plaintiff's job as a police officer, and because slightly uneven boards are a normal element of a ramp made of wooden planks, MTA had no obligation to ensure the planks were precisely even in anticipation of a freak accident like that Plaintiff describes. *See, e.g., Parson v. CSX Transp., Inc.,* 714 F. Supp. 2d 839, 843-44 (N.D. Ohio 2010) (noting that plaintiff would not have claim for walking in the yard on inherently uneven ballast because ballast "by its very nature is uneven").

Moreover, Plaintiff does not deny that MTA appropriately maintained the ramp. Donald Reid, the former MTA General Superintendent of Facilities, visited the ramp twice a month, noted any maintenance problems that needed repair, and responded to and fixed any safety problems that were brought to his attention. Def. SOMF at ¶¶ 32 - 33. *See Christian v United States,* 859 F. Supp. 2d 468, 476 (E.D.N.Y. 2012) (granting summary judgment where defendant inspected ramps and no complaints were made regarding the defect before the incident).

**Plaintiff Presents No Evidence That MTA Was Aware of the Allegedly Raised Board**

Plaintiff has put forth no evidence that MTA had notice of the alleged defective condition on the ramp before the Plaintiff was allegedly injured. He is therefore unable to prove the "foreseeability" element of a FELA claim, and his case must be dismissed. Plaintiff admits that, while he worked at this building for years, he had never tripped on, or even noticed, the raised wooden plank. *See* Pltf. SOMF. at ¶ 43. MTA is not aware of previous injuries involving the raised plank. Pltf. SOMF. at ¶ 44. Mr. Reid examined the ramp approximately twice per month and did not discover the alleged defect, and it was never reported to him by any other employees.

**Plaintiff Cannot Rely on the Americans with Disabilities Act to Establish Liability**

Finally, to the extent that Plaintiff argues that MTA's alleged failure to comply with the ADA's standard regarding height differential between boards on accessibility ramps, his argument is unavailing. The ADA does not set forth any safety standards – it is concerned only with accessibility, and other courts have similarly found that it is not a basis for liability on a tort claim. *See, e.g., Lettera v Retail Prop. Tr.,* CV 04-4955 (JO), 2006 WL 196975, at *5 (E.D.N.Y Jan. 24, 2006) (granting summary judgment when plaintiff tripped and fell on defendant's ramp in the parking lot because the ADA does not establish a duty of care in a negligence claim).

For these reasons, Defendant respectfully requests a pre-motion conference to discuss its motion for summary judgment. We thank the Court for its time and attention to this matter.

Respectfully submitted,

Helene Hechtkopf

**A029**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN W. KOWALCHUK,

                Plaintiff,

       -against-

METROPOLITAN TRANSPORTATION
AUTHORITY,

           Defendant.

Case No. 17-cv-2146 (ADS)(SIL)

**DEFENDANT'S PROPOSED
STATEMENT OF FACTS
PURSUANT TO
LOCAL CIVIL RULE 56.1
WITH PLAINTIFF'S RESPONSES &
COUNTER-STATEMENT OF FACTS**

       Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 of

the Southern and Eastern Districts of New York, defendant Metropolitan Transportation

Authority ("MTA") states that the following material facts are not in dispute along with

plaintiff's responses and counter-statement of facts not otherwise stated by said responses:

**The Parties**

    1.    The MTA is a public benefit corporation created by and organized under the New

York State Public Authorities Law.  N.Y. Pub. Auth. L. § 1263 et seq.

       **Admitted.**

    2.    MTAPD, a branch of the MTA, was created by statute.  *Id.* § 1266-h.

       **Admitted.**

    3.    Plaintiff John Kowalchuk was hired by the MTA as a police officer in 1996.

Deposition Transcript of John Kowalchuk, taken May 17, 2018.  ("Kowalchuk Dep.") at 13:14-

17).

**A030**

**Denied, except admit that in 1996 the plaintiff John Kowalchuk was hired by the LIRR as a police officer. (Kowalchuk 13:21-25). By act of legislative fiat, he became employed by the MTA Police Department effective January 1, 1998. [New York Public Authorities Law (hereafter "PAL") § 1266-h.]**

4.     Kowalchuk retired from the MTA Police Department ("MTAPD") on August 26, 2016. (*Id.* at 129:17-18).

**Admit, but note this fact is irrelevant & inadmissible according to the law of the FELA. <u>Eichel v. New York Cent. R. Co.</u>, 375 U.S. 253 (1963).**

<u>**Plaintiff's Duties, Training and Experience as a Police Officer**</u>ẇ

ẇ

5.     Kowalchuk's last MTAPD as ignment was to District 2, which included all of Nassau County, New York. (*Id.* at 16:15-20).

**Denied except admit that while plaintiff last worked at District 2, he did so on a restricted duty basis, effectively doing nothing but sit at a desk. (Kowalchuk 125:14-126:22).**

6.     ẇ an MTA police officer, Kowalchuk's duties included patrolling Long Island Rail Road trains and MTA properties. (*Id.* at 14:22-25).

**Denied except admit that these were plaintiff's duties when he worked full unrestricted duty.**

7.     When Kowalchuk was not patrolling, one of his as igned duties included desk duty. Desk duty is "working at the main desk at district" headquarters. (*Id.* at 25:12-13).

**Denied except admit that on January 27, 2015 John Kowalchuk was assigned to work desk duty. Desk duty is "working at the main desk at district" headquarters. (*Id.* at 25:12-13). Denied except admit that these were plaintiff's duties when he was able to work full unrestricted duty.**

8.     Kowalchuk worked on desk duty about once out of his three or four weekly shifts, whenever he had enough seniority to get the position. (*Id.* at 26:3-16.)

**A031**

**Denied, except admit that when he was able to work full unrestricted duty John Kowalchuk worked desk duty about once per week depending on seniority.  He otherwise would work as the** sergeant's operator [driver] or something to that effect.  **He normally worked 3 days per week and every fourth week would work a fourth day that week.**  (Kowalchuk 26:3-22)

9.      Desk duty entailed answ"ring the phones at district headquarters and responding

if anyone "walks up and has a police emergency."  (*Id.* at 25:21-23).

**Denied, except admit that when he was able to work full unrestricted duty, Desk duty entailed answering the phones at district headquarters and responding if anyone "walks up and has a police emergency."**

10.      On average, Kowalchuk had desk duty once a week.  (*Id.* at 26:15-16).

**Denied, except admit that when he was able to work full unrestricted duty John Kowalchuk worked desk duty about once per week depending on seniority.   See # 8 above.**

<u>**The Incident on January 27, 2015**</u>

11.      On January 27, 2015, Kowalchuk was as igned to desk duty at District 2

headquarters, working the 7:00 pm to 7:00 am shift.  (*Id.* at 25:11-12; 27-28:25).

**Admitted.**

12.      On January 27, 2015, Kowalchuk worked the 7:00 p.m. to 7:00 a.m. shift.  (*Id.* at

27:25-28:2).

**Admitted.**

13.      When Kowalchuk began his shift that day it was not snowing.  (*Id.* at 29:8-10).

**Admitted.**

14.      At approximately 5:00 a.m., Kowalchuk began shoveling the entrance ramp to the

District Two headquarters.  (*Id.* at 32:12-17).

**Denied, except admit that John Kowalchuk began shoveling the steps and handicapped ramp leading to the building's entrance on the exterior of the District 2 HQ.  At some point later on that morning** Sergeant Ho and

7

**A032**

Officer Graziose came out to clean the snow off the RMP's (Regular Motor Patrol a/k/a Police Cars) (Kowalchuk 77:18-23).

15.    Kowalchuk was not ordered to shovel snow and voluntarily chose to do so.  (*Id.*

at 31:11-19).

**Denied, except admit that while John Kowalchuk testified that he was not directed by anyone to shovel the snow, he further testified that his volition was circumscribed by the failure of the snow removal contractors to show up and clean the area outside District 2 including the parking lot, steps and the handicapped access ramp, as it was juxtaposed against his sense of duty in protection of the safety both members of the public who may come seeking police assistance and/or his co-employee police officers who would soon be arrived at District 2 for the next work shift that was soon to start. (Kowalchuk 29:11-32:8).**

**Alternatively denied, to the contrary of plaintiff's recollection plaintiff's immediate supervisor, Sgt. Ho, writes in his incident report (Defendant's deposition exhibit 3, page 2 of 2) "It snowed that night and as part of his assigned duties he shoveled snow from the front and rear entrances of the district as well as off the RMP's in front of the district with Sgt Ho and Officer Graziose."  In a similar regard, in a memorandum to his superior, Captain A. Lindsay (Defendant's deposition exhibit 4, Page 1, Plaintiff Bates 0029), Sgt. Ho writes "During that evening it snowed and as part of his assigned desk duties, Officer Kowalchuk shoveled snow off of the front entrance deck, rear entrance and police vehicles of District 2 with the assistance of myself and Police Officer Michael Graziose.**

16.    According to his own estimate, there were approximately 18 inches of snow on

the ground at that time.  (*Id.* at 32:24-25).

**Denied.  John Kowalchuk testified that he actually measured the snow at 18 inches with a ruler that he had placed on the top of the railing. (Kowalchuk 32:22-33:4)**

17.    It was dark outside when Kowalchuk began shoveling the snow.  (*Id.* at 33:15-

16).

**Admitted.**

7

18.     Kowalchuk used a fiberglass shovel he located in the headquarters.  Kowalchuk testified that this was not a show shovel, but a shovel "for like moving dirt and stuff like that." ,*Id.* at 33-34:22-4; 141:18-23).

**Admitted.**

19.     Kowalchuk began shoveling the entrance ramp by "pushing the snow off the ramp E. t to clear it."  When he began shoveling, it was snowing heavily.  (*Id.* at 34:19-22).

**Admitted.**

20.     Kowalchuk believes that he became injured when he was pushing the snow off the ramp, near where the ramp meets the first landing, because, he alleges, his shovel struck a lightly raised piece of wood.  He testified that he did not see the raised wood and that he did "know it was there until after I hit it."  (*Id.* at 35:2-4).

**Denied, except admit that Kowalchuk actually testified: "As I was pushing the snow off, I struck a raised piece of wood that I could not see, I didn't know it was there until after I hit it. But what happened was that after I hit it, it just jammed my shoulder back and, you know, I felt it in the shoulder but it wasn't enough that, you know, incapacitated myself at the time but I definitely knew I did something. (Kowalchuk 34:23-35:11)**

21.     Kowalchuk claims that when the shovel struck the slightly raised piece of wood he jammed his right shoulder and felt that "something…was out of whack at that point."  (*Id.* at 35:7-17).

**Denied except admit that John Kowalchuk testified at 35:5-17 as follows:**

> **…But what happened was that after I hit it, it just jammed my shoulder back and, you know, I felt it in the shoulder but it wasn't enough that, you know, incapacitated myself at the time but I definitely knew I did something.**

**Q.     So you felt something right away?**

7

**A034**

> **A.**   Oh, yeah. I don't know if the shoulder popped or something definitely was out of whack at that point.

22.   Kowalchuk admitted that the board was covered with snow and he was not sure how the board looked when he was shoveling.  (*Id.* at 55:9-12).

**Denied, Kowalchuk actually testified at 55:9-15 as follows:**

> **Q.**   And the board - - is this how the boards looked on the evening that you were shoveling that - -
> [showing witness photographs 107 & 108]

> **A.**   I don't know.

> **Q.**   You don ' t know. Okay.

> **A.**   They were covered with snow at the time so I don't know.

23.   After Kowalchuk struck the piece of wood, he finished shoveling the ramp.  (*Id.* at 35:23-24).

**Admitted.**

24.   Kowalchuk finished his tour at 7:00 a.m. and even worked an additional three hours that day for an overtime holdover.  (*Id.* at 36:7-13).

**Admitted.**

25.   Kowalchuk was in no pain, and drove himself home from his shift that morning. ,*Id.* at 60:12-20.)

**Admitted.**

26.   Kowalchuk did not file an injury report at that time.  (*Id.* at 136:16-20).

**Denied, plaintiff reported the matter to Sgt. Ho immediately after it happened.  (Kowalchuk 37:23-38:16)**

27.   The ramp was shoveled again later that morning; however, Kowalchuk was unsure who completed the shoveling.  (*Id.* at 37:6-22).

7

# A035

**Denied, plaintiff actually testified at 36:21–37:14 as follows:**

**Q.**   **Did you shovel the ramp again during that tour?**

**A.**   **No. I wasn't assigned up at the desk anymore. So I don't know whether the day tour did it or the contractor.  I don't know whoever did it. It was still snowing pretty heavy. So I assume it had to be done again.**

**Q.**   **So while you were, you know, finishing out that tour which went that extra few hours on overtime neither you or either of the two men that you were working with that day went out and did any more shoveling?**

**A.**   **Nobody did any shoveling, no.**

### The Ramp located at District Two Headquarters

28.   District 2 headquarters is located at located at 565 Commercial Avenue in Garden City, New York (referred to herein as "District 2 headquarters" or the "Commercial Avenue" facility).  (*Id.* at 17:2-9).

**Admitted.**

29.   The District 2 headquarters building has a wooden ramp leading from the parking lot to the entrance, along with wooden steps.  (See Photographs, Bates PLTF 0001 – 0012).

**Denied, but admit that the District 2 headquarters building has a wooden handicapped access ramp leading from the parking lot to its entrance, along with wooden steps.**

30.   The ramp is made of wood and when facing out of the front door of the headquarters, the ramp declines downward to the left and then comes to a landing.  The ramp then turns, angles downward to the right, and then declines toward the parking lot.  A wooden railing surrounds the ramp as the ramp descends.  (Kowalchuk Dep. at 34:9-18).

**Denied.  Plaintiff actually testified at 34:9-18 as follows:**

# A036

> The handicap ramp. You came out the door, the handicap ramp
> went to the left, went to a landing, made a right and then made
> another turn and went down to the parking lot area. And if you went
> to the right as soon as you came out the door you went down I think
> those four steps, four wooden steps. Everything was made out of
> wood.

31.     In 2010, the decks to the ramp were replaced.  (Deposition Tran cript of Donald

Reid, taken June 26, 2018.  ("Reid Dep."), Ex. X to the Decl. of Helene Hechtkopf at 11:3-18).

**Denied. The deposition testimony of Mr. Reid page 11:10-20 is
unclear.  However, at 28:7-21 Mr. Reid clearly indicates that in addition to the
surface the handicapped ramp its foundational underpinnings were also
replaced.  There Mr. Reid testified at as follows:**

**Q      Aside from making measurements, are you aware of any other method
that you might have employed to confirm the new ramp was
constructed to the measurements of the old ramp?**

**A      I could tell looking at the plans, looking at the ramp. I could also tell,
because the old columns had left marks in the blacktop, and the new
columns, the four by fours, were sitting in those marks. To my mind,
that meant the dimensions were the same.**

**Q      Did you actually go and look to confirm that the new columns were in
the same footprint as the old columns?**

**A      Yes, I did. That was part of my inspection.**

32.     Donald Reid, the former General Superintendent Facilities for the Metropolitan

Transportation Authority from 2008 to 2017, visited the District 2 headquarters approximately

twice a month.  Each time he visited, he performed a visual inspection of the building and the

property, noting any maintenance problems that needed to be repaired.  He would either repair

them immediately, or if they were larger, would repair them as soon as practicable thereafter.

(Declaration of Donald Reid ¶ 2, dated December 19, 2019. ("Reid Decl)).

**Denied.  At his deposition Mr. Reid testified at 53:8-54:19 as follows:**

**Q      When was the last time you ever inspected this property?**

**A      I don't inspect properties on a regular basis.**

7

**A037**

| | |
|---|---|
| Q | That's not my question.  When was the last time you inspected this property? |
| A | I never inspected this property. |
| Q | Did you ever direct anyone to inspect the property? |
| A | No. |
| Q | Would there have been anyone employed by the MTA whose job it would be to inspect the property? |
| A | Any MTA employee would complain about any conditions they saw to me. |
| Q | That's a different question. My question is: Is there another MTA employee, aside from yourself, whose job it would be to inspect this property? |
| A | No. |
| Q | Was there any form of preventative inspection for the MTA with regard to its police property at Commercial Avenue? |
| A | If I was on-site at Commercial Avenue for any reason, I would look around.  Anything I saw or anything that was reported to me would be taken care of. |
| Q | Was there any kind of program in place -- |
| A | Nothing formal. |

In any event, Mr. Reid admits he had no formal training in ADA compliance, no less in the ADA's various requirements for the construction of handicapped ramps, nor did he ever inspect the subject handicapped ramp for its ADA compliance, and he never required its reconstruction in 2010 be done to ADA specifications in the scope of work that he prepared. (Reid 17:15-27:18)

33.    Mr. Reid was also informed about maintenance problems at his facilities by

emails or telephone calls from MTAPD employee.  He responded to all reports that he received,

as "   ed the situation, and fixed any safety problems that he discovered.  (Reid Decl. ¶ 3).

Denied.  Mr. Reid classified the MTA Police as being "impatient" when they complained of prior instances of delays had with the snow maintenance at the District 2 headquarters.  (Reid 71:3-73:19) His response was

7

**A038**

**"he gets to us at -- when he gets to us".  (Reid 70:25-71:2).  He also reported that when Beth, one of the cops at District 1 complained to him that she was being ignored by the same snow removal contractor, Mr. Reid testified that he first complained to her about the costs of all these calls to the contractor, and then he admitted that he did no more than make a phone call to Adam to voice his concern. (Reid 71:16-72:7).  Nonetheless, Mr. Reid thereafter renewed the contract with the same snow removal contractor without contractually ever addressing any of the many prior complaints and incidents had at District 2 regarding untimely or inappropriate snow and ice maintenance. (Reid 73:8-19).**

34. Mr. Reid has no recollection of receiving a report about the particular board the

Kowalchuk claims to have been injured on.  (Reid Decl. ¶ 4).

**Denied.  This item requires impermissible speculation as to the state of Mr. Reid's mind.  Moreover, accepting this statement is wrongfully based on Mr. Reid's impermissible self-verification of the truthfulness of his own statement regarding his own state of mind.**

35.      Mr. Reid was also in charge of the snow removal contract for the District 2

headquarters facility.  (Reid Decl. ¶ 5).

**Admitted.**

36.      A third party contractor, ADCO, wa  responsible for all of the snow removal for

the headquarters in 2015, including removing snow from the ramp and stairs leading from the

building to the parking lot.  (Reid Decl. ¶ 5; Reid Dep. at 75:17-21).

**Admit that the MTA contracted with ADCO to perform snow maintenance work at District 2, but note this fact is irrelevant & inadmissible according to the law of the FELA, which provides that the defendant railroad employer has a non-delegable duty to provide a safe workplace.  Shenker v. Baltimore O.R. Co., 374 US 1, 83 S.Ct. 1667, 10 L.Ed 2d 709 (1963).**

37.      ADCO's performance of its contractual duties was appropriate, and Mr. Reid was

pleased with their s"/( ice.  (Reid Decl. ¶ 5).

**Denied.  There were many complaints and incidents regarding ADCO's poor performance of its contractual duties, yet Mr. Reid renewed the ADCO contract despite his actual knowledge of some of these prior incidents, which were also within the knowledge of now Captain (then Lt.) Devlin, who at all relevant times was then the officer in charge of District 2.  See #33 above.  See**

7

**A039**

also more generally, Deposition of Lt. Timothy Devlin, dated November 10, 2016 taken in the case of <u>Russo v. MTA</u>, 15 CV 6787 (LDW), at 23:10-28:6) where he discusses his own injury as well as those of district's administrator, Sunila Jaggi's, and Police Officer Ralph Patacca's injuries that all occurred as a result of snow and ice in the parking lot that was not cleared by ADCO.  Lt. Devlin also testified about multiple other instances, including that of Michelle Russo, that was caused in part by the failure of ADCO to show up to clean the lot when needed (Devlin at 42:13-44:4).  So too, Mr. Reid testified as to his knowledge of complaints regarding the failure of ADCO to show up and/or the quality of ADCO's snow removal work (Reid at 70:15-73:7) (See also Reid deposition from <u>Russo v. MTA</u>, Supra, 20:4-21:15).

**Mr. Reid being pleased with the foregoing kind of service stands as the epitome of negligence and/or deliberate indifference.**

38.    Kowalchuk was aware that a contractor was responsible for snow removal at the district headquarters, including shoveling of the ramp and walkways.  (Kowalchuk Dep. at 31:3-8).

**Denied. This fact is irrelevant & inadmissible according to the law of the FELA, which provides that the defendant railroad employer has a non-delegable duty to provide a safe workplace.  <u>Shenker v. Baltimore O.R. Co.</u>, 374 US 1, 83 S.Ct. 1667, 10 L.Ed 2d 709 (1963).  Moreover, this fact is an inadmissible and impermissible attempt to argue plaintiff's assumption of risk, which defense has been abolished by the FELA at 45 USC § 54.**

39.    Police officers are not expected to do snow removal at the District 2 headquarters building, and it is not in their job description or responsibilities to shovel snow.  (Reid Decl. ¶ 6).

**Denied. This fact is irrelevant & inadmissible according to the law of the FELA, which provides that the defendant railroad employer has a non-delegable duty to provide a safe workplace.  <u>Shenker v. Baltimore O.R. Co.</u>, 374 US 1, 83 S.Ct. 1667, 10 L.Ed 2d 709 (1963).  Moreover, this fact is an inadmissible and impermissible attempt to argue plaintiff's assumption of risk, which defense has been abolished by the FELA at 45 USC § 54.**

**Further denied, because of the many prior incidents had at District 2 as described in both items #33 and #37 above, and the failure of Mr. Reid or supervisory police command to take any meaningful remedial measures in response to these many and varied prior incidents, and the many prior complaints had with regard to both the quality and timeliness of the snow removal services ostensibly provided by ADCO, police command (including Lt. Devlin and Mr. Reid) knew that its officers were picking up the slack for ADCO's**

**A040**

shortcomings and that they were shoveling snow from the handicapped ramp, the parking lot and the RMP's at District 2, or otherwise making arrangements for others to assist them in that process by plowing out the parking lot.

Additionally denied, because this is an irrelevant fact. The FELA merely requires that whatever the injured railroad worker was doing at the time of his injury be in furtherance of his employers' business in interstate commerce by rail, or alternatively that it be work closely and/or substantially affecting the same. Here plaintiff testified that he was cleaning the snow from the handicapped access ramp and steps in preparation for the arrival of the next shift of police officers (i.e.: so that they may have a safe means of ingress/egress to District 2 and not get injured themselves) and/or in protection of the safety of the members of the public at large and especially the disabled, who may desire to enter District 2 to seek police information and/or assistance. (Kowalchuk 31:11-19). For these reasons, because his efforts were designed for the purpose of keeping his workplace safe, plaintiff's work was performed in furtherance of his employer's business in accordance with the FELA regardless of whether or not he was expected to do snow removal and/or whether or not this particular task was within his written job description in those exact literal terms.

Alternatively denied, by reason of plaintiff's immediate supervisor, Sgt. Ho, who writes in his incident report (Defendant's deposition exhibit 3, page 2 of 2) "It snowed that night and as part of his assigned duties he shoveled snow from the front and rear entrances of the district as well as off the RMP's in front of the district with Sgt Ho and Officer Graziose." In a similar regard, in a memorandum to his superior, Captain A. Lindsay (Defendant's deposition exhibit 4, Page 1, Plaintiff Bates 0029), Sgt. Ho writes "During that evening it snowed and as part of his assigned desk duties, Officer Kowalchuk shoveled snow off of the front entrance deck, rear entrance and police vehicles of District 2 with the assistance of myself and Police Officer Michael Graziose.

40.     Kowalchuk was aware that "it's not a police officer's duty to shovel" snow.

(Kowalchuk Dep. at 30:7-8; 77:10-13).

Denied. This fact is irrelevant & inadmissible according to the law of the FELA, which provides that the defendant railroad employer has a non-delegable duty to provide a safe workplace. <u>Shenker v. Baltimore O.R. Co.</u>, 374 US 1, 83 S.Ct. 1667, 10 L.Ed 2d 709 (1963). Moreover, this fact is an inadmissible and impermissible attempt to argue plaintiff's assumption of risk, which defense has been abolished by the FELA at 45 USC § 54.

Alternatively denied, by reason of plaintiff's immediate supervisor, Sgt. Ho, who writes in his incident report (Defendant's deposition exhibit 3, page 2 of

**A041**

**2) "It snowed that night and as part of his assigned duties he shoveled snow from the front and rear entrances of the district as well as off the RMP's in front of the district with Sgt Ho and Officer Graziose."  In a similar regard, in a memorandum to his superior, Captain A. Lindsay (Defendant's deposition exhibit 4, Page 1, Plaintiff Bates 0029), Sgt. Ho writes "During that evening it snowed and as part of his assigned desk duties, Officer Kowalchuk shoveled snow off of the front entrance deck, rear entrance and police vehicles of District 2 with the assistance of myself and Police Officer Michael Graziose.**

41.     Photographs taken well over a year after the incident by the Plaintiff show a board on the ramp that was raised slightly above the board next to it on the far right side.  (*Id.* at 44:3-21).  The raised portion of the plank is curved downward so that only a portion of the raised height is perpendicular to the board next to it.  (See Photographs, Bates PLTF 0009).

**Denied.  The photograph cited by the first sentence of #41 states on its face that it was taken on 20150327 (or 2015-03-27) at 061951 (or 06:19:51) which are the date and military time when the photo was taken.  The cited photograph was in fact taken just two months after the subject occurrence of January 27, 2015 and not "well over a year after the incident" as asserted above. Moreover, the photographs at Plaintiff's Bates #0009 (which was taken more than a year after but which shows the same defect in the same condition as that taken just two months after) are taken from a perspective too far away to see any of the detail claimed by the second sentence asserted above.**

42.     The raised section of the wood is on the far right side, away from the center of the ramp, when 4/$'""#  ing down the ramp towards the parking lot.  (See Photographs, Bates PLTF 0009).  In the center of the ramp where pedestrian traffic would ordinarily occur, the difference in height is smaller.  (*Id.*; Kowalchuk Dep. at 45:2-7).

**Denied, the photographs at Plaintiff's Bates #0009 are taken from a perspective too far away to see any of the detail claimed by this paragraph.**

43.     Kowalchuk had been to the District 2 headquarters well over 100 times before this incident occurred.  (*Id.* at 40:7-9).  Kowalchuk had never tripped on or noticed the raised plank before the incident.  Further, he never discussed the plank with anyone or saw someone else trip over it before the incident.  (*Id.* at 39:3-17).

**A042**

**Admitted.  But plaintiff further testified as to the unusual frequency with which he actually used the handicapped ramp at 40:14-22 as follows:**

Q.      And to enter the building did you need to walk up that ramp?

A.      No.

Q.      Were there stairs as well?

A.      Yes.

Q.      Did you ever use the ramp?

A.      Not usually.

Q.      But had you ever?

A.      Yes.

44.      MTA is aware of no other injuries caused by this raised board on the wooden

ramp.  (Devlin Decl. ¶ 4.)

**Denied.  The self-professed fact that Lt. Devlin asserts his own lack of such knowledge does not rule out that such knowledge was had by others employed by the MTA, or that the MTA itself has such knowledge by reason of that which is known by all of its other agents, servants and/or employees.  Nor does it rule out the constructive knowledge that should have been had by the MTA under a reasonable program of inspection of its handicapped facilities made available to its employees and members of the general public at large.**

45.      After the alleged injury, Kowalchuk returned to work the following day.  (*Id.* at

63:5-10).

**Denied.  John Kowalchuk never testified that he had an "alleged" injury. In fact, immediately prior to the cited passage plaintiff testified to the very real and painful effects of his injury that he was experiencing when he awoke in the evening of January 27, 2015, for which he took aspirin that did not help.  And while he went to work for his next shift, he again reported his injury to his supervisor Sgt. Ho. (61:15-64:4).**

46.      Kowalchuk worked all of his assigned shifts from January 28, 2015, to February

16, 2015.  (Kowalchuk Dep. at 65:13-17)

**A043**

**Admitted.  But John Kowalchuk notes that while he worked his pain was constantly present and worsening in intensity.  Because of this fact he started consulting with doctors who put him on steroids.  His pain was such that he stopped driving during that time (which he earlier said was his main job function).  The steroids didn't help much and three days later he wound up at a hospital emergency room.  About a week after the emergency room, other doctors with whom he consulted, advised that he should stop working, which he did on February 16, 2015. (65:13-71:19).**

47.    On February 17, 2015, Kowalchuk alleges that he was advised by one his doctors

to stop work.  (*Id.* at 71:13-19).

**Denied.  John Kowalchuk never "alleges" that he was advised by one of his doctors to stop work.  He states at 71:18-19 "Probably one of the doctors had advised to stop work."**

48.    He did not report the injury to MTAPD until February 18, 2015.  (MTA Incident

Report of Theodore Ho ("Incident Report"), Kowalchuk_0823).

**Denied.  John Kowalchuk testified that he reported the incident and injury twice.  He first reported the matter to Sgt. Ho following the happening (37:23-38:14) and again for a second time when he reported to his next work shift later that evening (63:5-64:4) which would be 7 PM on January 27, 2015.  It was the cited "official" paperwork that was not prepared until February 18, 2015.**

Ŵ

**Kowalchuk's Return to Work and Retirement**

49.    Kowalchuk was out of work on disability leave from February 17, 2015 to April

6, 2016.  (*Id.* at 114:6-8).

**Denied.  At the cited passage John Kowalchuk merely testified that he returned to work on April 6, 2016.  Plaintiff further points out that he was not on "disability" as represented by #49.  Rather, the MTA unlawfully put him into Workers' Compensation, notwithstanding that the FELA exempts railroad employees injured on the job from Workers' Compensation.  In so doing the MTA takes unlawful advantage of Workers' Compensation's mandatory reduced medical costs, which costs defendant is contractually obliged to pay per the applicable collective bargaining agreement and/or the public officer's law of the State of New York.**

7

**A044**

50.     On June 23, 2015, Kowalchuk suffered a series of three strokes. (*Id.* at 95-96:22-6).

**Admitted.  But John Kowalchuk further testified at 90:9-15, that on or about May 4, 2015, or some three weeks prior to his strokes, he underwent surgery to his cervical spine in treatment of the injuries he suffered when shoveling snow on January 27, 2015.  The surgery consisted of partial discectomies at the C4-5 and C5-6 levels, a fusion of both levels that included the insertion of a metal plate secured in place by six screws all of which holds his vertebrae together.**

51.     Kowalchuk returned to work on April 6, 2016, as a patrol officer, and was assigned to District 3 in Jamaica, Queens.  (*Id.* at 120:11-15).

**Denied.  John Kowalchuk was forced by his employer to return to work, when Lt. Deshensky called and said, "return to work or you will be fired." (115:4-7).  This was against the advice of John Kowalchuk's treating doctors (122:19-22).  While he was told to report to District 3 in Jamaica, NY, contrary to that cited by defendant John Kowlachuk did not state that he did regular patrol work there.  Rather, John Kowalchuk testified as to his physical limitations upon return to work, which return was on a restricted duty capacity because he could not perform the essential functions of a full duty police officer, nor was he permitted to carry a firearm.  (117:3-120:13).  Obviously, the lack of a firearm precluded Joh Kowalchuk from returning back to patrol duty. Id.**

52.     Following medical examinations by MTA medical personnel, Kowalchuk was as igned to desk duty at District Two headquarters in Garden City, New York.  (*Id.* at 122,123:19-6).

**Denied, except admit that because travel to his assignment at District 3 in Jamaica, NY was aggravating his symptomology and because his treating doctors believed he should not have returned to work at all, pursuant to the applicable collective bargaining agreement the MTA sent John Kowalchuk for evaluation by an "independent" doctor, who found that John Kowalchuk's travel should be restricted to no more than 30 minutes.  Since Jamaica was a 35-minute train ride from where he was then living in Long Beach, NY, the MTA reassigned John Kowalchuk to District 2, where Mrs. Kowalchuk could drive her husband in approximately 25 minutes.  (120:16-123:24).**

53.     Kowalchuk opted to retire becau e was because after three months of doing nothing he preferred not to work in the office.  (*Id.* at 129:2-18).

7

**A045**

**Denied.  John Kowalchuk testified that the MTA did not allow him to do anything while he was on restricted duty.  He just sat at a desk, but he did not answer any phones, did no paperwork, he just sat there and tried to stay comfortable, analogizing that to staring at the wall all day until his wife picked him up to go home. He decided to stop working because staying home was easier for him than sitting uncomfortably while doing nothing at District 2 all day. (126:4-22 & 128:21-129:18).   Moreover, we note that evidence regarding retirement is irrelevant & inadmissible according to the law of the FELA.  Eichel v. New York Cent. R. Co., 375 U.S. 253 (1963), this is largely due to the fact that retirement connotes receipt of a pension and reference to such collateral sources is prohibited at trial in FELA matters.  Id.**

54.     Kowalchuk retired from the MTAPD effective August 26, 2016.  *Id.*

**See #4.  This is redundant.**

**Admit, but note this fact is irrelevant & inadmissible according to the law of the FELA.  Eichel v. New York Cent. R. Co., 375 U.S. 253 (1963)**

55.     Per MTAPD policy, Kowalchuk continued to be paid his regular salary during all periods that he was out of work.  (Kowalchuk Dep. at 95:5-15).

**Denied.  Per the rulings of the New York State Workers' Compensation Board, the MTA was compelled to pay John Kowalchuk base salary. He was not allowed to collect his night differential or missed overtime while he was paid workers compensation wage replacement. (95:6-15).  Moreover, plaintiff objects to this irrelevant fact.  Plaintiff's receipt of Workers' Compensation, a wage replacement collateral source payment, is inadmissible at his FELA trial.  Eichel v. New York Cent. R. Co., 375 U.S. 253 (1963).**

7

**A046**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN W. KOWALCHUK,

                    Plaintiff,

       -against-

METROPOLITAN TRANSPORTATION
AUTHORITY,

                Defendant.

Case No. 17-cv-2146 (GRB)

DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED
COUNTER STATEMENT OF FACTS

1)      Photograph DSC_0021 on Plaintiff Bates 0006 shows that a key fob easily fits

beneath a level (59:3-21) that was placed perpendicular to the top edge of the raised plank had at

the leading edge if the transitional element of the District 2 wheelchair ramp as it leads from the

handicapped ramp's upper portion into the landing where a wheelchair turns to transfer to the

lower portion of the ramp.

      **Defendant Response:**  The photograph speaks for itself; disputed as to whether the

      photograph accurately reflects the condition of the ramp on the date of the Plaintiff's

      alleged accident, as Plaintiff testified that the photograph was taken "definitely more than

      a year after the incident."  (Kowalchuk Tr. 49:9-16.)

2)      Photograph DSC_1400.JPG on Plaintiff's Bates 0012 shows that the key fob

measures approximately 6/16" in thickness. Id.

      **Defendant Response:**  The photograph speaks for itself.

3)      In reference to the photographs, John Kowalchuk testified that photograph 951

depicted the raised plank that he hit when shoveling on January 27, 2015.  Plaintiff testified that

**A047**

the height of the raised board upon which his shovel became caught measured three-quarters of

an inch (44:3-16; Referring to Photograph 20150327_061951.jpg, which appears in the upper

right of plaintiff's Bates 0013, marked as defendant's deposition exhibit 1.)

> **Defendant Response:** Undisputed that this was Plaintiff's testimony, however Defendant
>
> disputes the three-quarters of an inch measurement.  Plaintiff was unsure at the time of
>
> his alleged injury of the existence of the height differential between the boards and only
>
> realized this well after his injury occurred. (Kowalchuk Tr. at 39:3-17; 40:7-9; 55:9-12.)
>
> Moreover, this photograph was taken well over a year after the alleged injury occurred.
>
> (Kowalchuk Tr. 49:9-16.)

4)      Regulations implemented under the aegis of The Americans with Disabilities Act

and Section 504 of the Rehabilitation Act of 1974 both require States & a State's agencies who

provide wheelchair access ramps to regularly inspect those access ramps for defects and that they

be constructed in such a manner as to assure that the transitional point between ramps and

landings be flush and or beveled so as to provide a clean unobstructed path for the disabled (and

especially wheelchairs) to safely travel over them without getting caught.  28 CFR § 35.133(a).

See e.g.: 28 C.F.R. Part 36, App. A, §§ 4.5.2 changes in level between ¼" and ½" shall be

beveled with a slope no greater than 1:2 and that changes in level greater that ½" shall be

accomplished by means of a ramp that complies with 4.7 or 4.8.   §§ 4.7.2, as incorporated to

landings by the foregoing provides in pertinent part that "Transitions from ramps to walks,

gutters, or streets shall be flush and free of abrupt changes."  See also, 28 CFR § 35.133(a), 28

CFR § 35.150 and 28 CFR § 35.151.

**A048**

**Defendant Response:**  The statements contained in this paragraph are legal conclusions, not statements of facts as required by Rule 56.1.  To the extent a response is required, Defendant disputes the contentions and implications in paragraph 4.

# A049

Activity in Case 2:17-cv-02146-GRB-SIL Kowalchuck v. Metropolitan Transportation Authority Order on Motion for Pre Motion Conference

From:  ecf_bounces@nyed.uscourts.gov

To:  nobody@nyed.uscourts.gov

Date:  Thursday, February 6, 2020 at 01:15 PM EST

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

### Eastern District of New York

### Notice of Electronic Filing

The following transaction was entered on 2/6/2020 at 1:13 PM EST and filed on 2/6/2020

**Case Name:**      Kowalchuck v. Metropolitan Transportation Authority
**Case Number:**      2:17-cv-02146-GRB-SIL
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**ELECTRONIC ORDER granting [24] Motion for Pre Motion Conference. A pre-motion conference has been scheduled for March 2, 2020 at 10:30 a.m. before the undersigned in Courtroom 840 of the Central Islip Courthouse at which time the parties should be prepared to address defendant's anticipated summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Before requesting an adjournment, the parties shall meet and confer and submit a joint letter with several proposed dates. Ordered by Judge Gary R. Brown on 2/6/2020. c/ecf (Johnston, Linda)**

**2:17-cv-02146-GRB-SIL Notice has been electronically mailed to:**

Philip Jay Dinhofer      pjdllc2806@yahoo.com, phildinhofer@hotmail.com

Helene R Hechtkopf      hhechtkopf@hnrklaw.com

Jason Douglas Barnes      jabarnes@mtahq.org, jason.douglas.barnes@gmail.com

**2:17-cv-02146-GRB-SIL Notice will not be electronically mailed to:**

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK



----------------------------X
                            :
JOHN W. KOWALCHUCK, JR,     :
                            :   17-CV-2146 (GRB)(SIL)
              Plaintiff,    :
                            :   March 6, 2020
                            :
              V.            :   Brooklyn, New York
                            :
METROPOLITAN TRANSPORTATION :
AUTHORITY,                  :
              Defendant.    :
----------------------------X


    TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
         BEFORE THE HONORABLE GARY R. BROWN
             UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          PHILIP DINHOFER, ESQ.
                            77 N. Centre Ave., Suite 311
                            Rockville Centre, NY 11570


For the Defendant:          HELENE HECHTKOPF, ESQ.
                            Hoguet Newman Regal &
                            Kenney, LLP
                            60 East 42nd Street, 48th Floor
                            New York, NY 10165




Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            274 Hovey Road
                            Milo, ME 04463
                            Aria@leinen.net



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
1              THE CLERK:  17-CV-2146, Kowalchuck v.
2    Metropolitan Transportation Authority.
3              Counsel, please state your appearances for
4    the record.
5              MR. DINHOFER:  Philip Dinhofer for the
6    plaintiff.  Good morning, your Honor.
7              THE COURT:  What's your last name again,
8    counsel?
9              MR. DINHOFER:  Dinhofer.
10             THE COURT:  Dinhofer.  Is that the
11   traditional spelling on Dinhofer?
12             MR. DINHOFER:  D-i-n-h-o-f-e-r.
13             THE COURT:  Pretty much, okay, thank you.
14             Counsel?
15             MS. HECHTKOPF:  Good morning, your Honor.
16   Helene Hechtkopf from Hoguet Newman Regal & Kenney for
17   the defendant.  I'm here with my associate, David
18   Hollander, also from the same firm.
19             THE COURT:  Welcome.
20             All right, we're here for a pre-motion
21   conference.  My understanding is that defendants would
22   like to make a summary judgment motion in this case.
23   Am I right about that?
24             MS. HECHTKOPF:  That's correct.
25             THE COURT:  I've reviewed your letter as
```

1   well as the 56.1 statements.  Counsel did a fine job,

2   all counsel did a fine job on that.  Am I correct in

3   understanding that the principal basis of the motion if

4   not the sole basis of the motion is a scope of duties

5   argument, yes?

6           MS. HECHTKOPF:  No, your Honor, I would say

7   that's half of the motion.

8           THE COURT:  Okay, let's focus on that half

9   for a second.

10           MS. HECHTKOPF:  Yes.

11           THE COURT:  On the scope of duties, if I

12   look -- you all filed a combined 56.1, I think.

13           MR. DINHOFER:  Correct.

14           THE COURT:  Which was very helpful.

15           MS. HECHTKOPF:  I have it.

16           THE COURT:  If you look at paragraph 15,

17   your assertion is Kowalchuck, the plaintiff, was not

18   ordered to shovel snow and voluntarily chose to do so.

19   That was your assertion, yes?

20           MS. HECHTKOPF:  Yes.

21           THE COURT:  Counsel then responds in a very

22   articularly-written first paragraph, which I'm going to

23   ignore for reasons I'll explain.  The second paragraph

24   is what I'm interested in.  It says, "It's denied to

25   the contrary of plaintiff's recollection.  Plaintiff's

immediate supervisor, Sergeant Ho (ph), writes in his

incident report" -- and there's a citation here -- "it

snowed that night and as part of his assigned duties,

he shoveled snow from the front and rear entrances of

the district as well off the RMP's in front of the

district with Sergeant Ho and Officer Graziose (ph)."

Then there's a similar quote from somebody else.

In light of that, is there really an issue

-- I mean, isn't there an issue that has to go to trial

on whether or not it was part of his assigned duties?

MS. HECHTKOPF: He himself testified he did

it voluntarily, it was not one of his assigned duties.

I don't -- and I can -- as part of this motion, I will

put in two other pieces of evidence. One is an

affidavit from Mr. Reid (ph), who is in charge of --

he's in charge of all of the superintendents of

maintenance for this area, who says that officers are

never assigned to shovel snow, it's not part of their

assigned duties. And the collective bargaining

agreement, which doesn't make shoveling snow part of an

officer's assigned duties.

I don't know why Sergeant Ho wrote that in

his -- I acknowledge that he did write that in the

incident report, I don't know why. But it is not an

officer's assigned duty. He's not provided with

1  equipment to do it.

2  THE COURT:  So Sergeant Ho may be a mystery.

3  But then let's go up the chain of command to Captain A.

4  Lindsey (ph), who writes in his report, "During that

5  evening, it snowed, and as part of his assigned desk

6  duties, Officer Kowalchuck shoveled snow off the front

7  entrance deck, rear entrance deck, and police vehicles

8  of district 2, with the assistance of myself and Police

9  Officer Michael Graziose," yeah?

10  MS. HECHTKOPF:  No.  Again, your Honor,

11  that's Sergeant Ho writing to Captain Lindsey.

12  THE COURT:  Okay, thank you.  So what we can

13  say, though, is that the plaintiff's superior was under

14  the impression that it was part of the plaintiff's

15  duties to do this, yeah?

16  MS. HECHTKOPF:  This memo was written

17  several weeks later so I don't know that it's as --

18  THE COURT:  I'm not sure if it matters if it

19  was written last night.  If he wrote it, it's a

20  problem, yeah?

21  MS. HECHTKOPF:  I acknowledge that he wrote

22  it.  There's no doubt that he wrote it.

23  THE COURT:  So doesn't plaintiff have the

24  right to have a jury decide whether he himself, that is

25  the plaintiff himself, who can be impeached by his own

1  counsel on his testimony, if he's remembering that

2  wrong that he was in fact told to do it.

3           MS. HECHTKOPF:  If we assume that, your

4  Honor, I think there's still a legal problem with the

5  next step of the FELA burden of proof, which is the

6  knowledge that this was -- MTA had no knowledge that

7  this was a dangerous defect in the ramp.  They had no

8  obligation to fix it.  There had never been --

9           THE COURT:  Well, let's talk about that.

10  Where's the -- where are the facts that you assert that

11  are undisputed as to the knowledge on the danger of the

12  ramp?

13           MS. HECHTKOPF:  There's an affidavit from

14  Donald Reid.  Again, the maintenance -- Superintendent

15  of Maintenance for this district.  He testified he had

16  never been told that there was a problem with this

17  ramp.  He was out there at the District 2 headquarters

18  approximately every two weeks.  When he went out there,

19  he did a visual inspection.  I think there's a quibble

20  about the word "inspection" but he walked around and

21  looked at the property.  He never saw this problem

22  before.  Nobody had reported it to him.

23           Mr. Kowalchuck himself says he worked at

24  this physical location for many years and never noticed

25  this problem.  So the MTA was not on notice that there

1    was a very small maybe defect, if you want to call it

2    that, in the -- a height discrepancy in one part of the

3    wooden ramp leading up to the district office.

4             THE COURT:  Okay, so there's obviously a

5    huge body of case law on the issue of notice.  There's

6    the paper bag on the steps of the Museum of Modern Art

7    or Metropolitan Museum of Art, and that was an

8    interesting outcome where everyone said oh, look at

9    that, so that's the law.  That to me -- that line of

10   cases speaks to ephemeral things, things that arise

11   suddenly, the spilled milk, the dropped napkin or

12   whatever.  When you have something that's like a

13   construction defect let's call it, albeit you say a

14   small one -- is there constructive notice when

15   something has been around so long that there should be

16   some obligation to inspect, and the failure to do so

17   would result in effectively constructive notice?

18            MS. HECHTKOPF:  Your Honor, I've spoken --

19   so this is not in the record yet but I can ask -- your

20   Honor brought up this interesting point so Mr. Reid can

21   speak to this.  I've spoken to him about it.  When you

22   build a ramp made of wooden planks, ordinarily, you

23   would build it flat and you would insure that it was.

24   This is a type of thing that can happen from weather --

25            THE COURT:  Of course.

1        MS. HECHTKOPF:  -- where it might warp at

2   some point.

3        THE COURT:  Right.

4        MS. HECHTKOPF:  I don't know if you'd call

5   it ephemeral but it's not something that you would -- I

6   don't know that it's a construction defect.  There's no

7   evidence that it was built with this height

8   differential.  Ordinarily, it wouldn't be -- the nails

9   can come up over time.

10        THE COURT:  Right.

11        MS. HECHTKOPF:  There's salt -- the air from

12   -- we're on Long Island so the salt can affect that.

13   The salt from plows can affect that, so these things

14   develop over time.

15        THE COURT:  Right.  So I'm looking at the

16   testimony that starts on page 7 and goes to maybe it's

17   also page 7.  They're all numbered 7, that's not good.

18   The testimony that's excerpted in paragraph 32 of your

19   joint 56.1 statement, where essentially, counsel

20   elicited that there was no one at the MTA whose job it

21   was to inspect that property and that ramp and so

22   forth.  If counsel can establish that, isn't there then

23   a material issue of fact as to whether or not there was

24   constructive notice of the defect based on they failure

25   to inspect it?

1           MS. HECHTKOPF:  I don't think there was a

2    failure to inspect.  Mr. Reid testified in this piece

3    of excerpted testimony that if he was on site on

4    Commercial Avenue for any reason, he looked around.

5    Anything that he saw or was reported to him, he fixed.

6           THE COURT:  Yes, but he said "I never

7    inspected this property," prompting counsel to ask --

8    saying, "That's a different question.  Is there another

9    MTA employee aside from yourself whose job it would be

10   to inspect this property?"  "Answer:  No."  So if no

11   one inspected the property, doesn't that raise an issue

12   of fact as to constructive knowledge at this point?

13          MS. HECHTKOPF:  I think the difference -- I

14   think it comes down to that word "inspect."  Mr. Reid

15   testified that he's in charge of the maintenance and

16   when he was there, he would look around.  I think he

17   was quibbling with Mr. Dinhofer about the word

18   "inspect," what does an inspection mean?  He definitely

19   did not walk around with a checklist and check things

20   off that you might imagine in a very formal inspection.

21          THE COURT:  Can plaintiff make its case --

22   and I know you're going to differ with me on what the

23   evidence means.  But legally speaking, can plaintiff

24   make its case based on a constructive notice?

25          MS. HECHTKOPF:  I don't think so.

```
 1              THE COURT:  Because?
 2              MS. HECHTKOPF:  I was reading FELA cases
 3    last night and the railroad has to be on actual notice
 4    of the problem.
 5              THE COURT:  But that can't always be true,
 6    right?  I'm really trying to explore the limits of
 7    this.  If the railroad bridge on 9th Avenue falls to the
 8    ground but everyone decides not to look, if people get
 9    hurt on that, are you telling me that unless we have a
10    written report or the actual notice from somebody that
11    the bridge fell into the gully, we're not on the hook
12    for that?  I mean, there's got to be some duty of
13    inspection at some point, right?
14              MS. HECHTKOPF:  I would agree with your
15    Honor for that example, yes, there would clearly --
16              THE COURT:  I was going too far to make it
17    easier.
18              MS. HECHTKOPF:  But here we're talking about
19    a wooden ramp that leads up to a door.  The ramp itself
20    was structurally sound.  It had been looked at by Mr.
21    Reid when he had visited.  He would walk on the ramp.
22    Everyone walked on the ramp.  It wasn't like they were
23    purposely ignoring this ramp that was in decrepit
24    condition.  It was a relatively new ramp at the time.
25    And we're talking about a very, very tiny defect.
```

We're talking about a raised board that's raised less than half of an inch, something that as your Honor would walk on the ramp, you might not notice even if you were looking for it.  It was at the very edge of the ramp.  It's not even in the middle portion, where a regular person would be walking.

THE COURT:  But I might notice it if I was shoveling the snow.

MS. HECHTKOPF:  One might, although this had never happened before and the ramps had always been cleared by the professional contractors, and nobody had ever gotten a shovel stuck on this board.  There was no testimony that MTA had had shovels stuck on other wooden ramps elsewhere, so this was not a thing that people would ordinarily be looking out for.

THE COURT:  Counsel, what do you say?

MR. DINHOFER:  Well, in the immediate response, I say --

THE COURT:  Pull the mic closer, also.

MR. DINHOFER:  In the immediate response, I say just because it never happened before doesn't mean they weren't negligent in creating the defect.

THE COURT:  Yeah, but my question --

MR. DINHOFER:  But the greater problem --

THE COURT:  My question is the constructive

1  notice issue.

2       MR. DINHOFER:  The greater problem is, there

3  was no one with ADA knowledge to do a proper ADA-

4  compliance inspection, and that's a particular problem

5  when you're dealing with a wheelchair ramp.

6       THE COURT:  But hold on, counsel.  Just

7  because there's statutory violations or regulatory

8  violations, you know that that doesn't necessarily rise

9  to a negligence finding, right?

10       MR. DINHOFER:  That's some evidence of

11  negligence, though, and that's what gets me to a jury.

12       THE COURT:  The failure to conduct an ADA

13  inspection, really?  Wow.

14       MR. DINHOFER:  There's a case from the

15  Second Circuit called Jones v. Spettenbush Spread Star

16  (ph).

17       THE COURT:  Okay.

18       MR. DINHOFER:  It's a maritime case but

19  maritime and FELA are interchangeable.

20       THE COURT:  Very close, go ahead.

21       MR. DINHOFER:  Yes.  They say explicitly the

22  Second Circuit -- this is in 1998.  They say that while

23  it's not strict liability as would be something like

24  the Safety Appliance Act, it is some evidence of

25  negligence, violation of the statutes and regulations.

1   This is in turn dealt with OSHA statutes and

2   regulations.

3          THE COURT:  Right.  Of course, this is --

4   it's interesting because if there was a failure to

5   inspect for some environment regulation and nobody went

6   and looked at the chimney to see if it was built

7   correctly and that chimney falls over because it's not

8   built right, I'm not sure it's the same thing.

9          MR. DINHOFER:  But these regulations dealt

10  with these transitional elements and said very

11  specifically as to these transitional elements, where

12  the ramp meets that platform, okay?

13         THE COURT:  Would the platform have violated

14  the ADA regs?

15         MR. DINHOFER:  Yes.

16         THE COURT:  That minor discrepancy?

17         MR. DINHOFER:  That minor discrepancy.  And

18  if you look at the very last one, the very last page of

19  the statement there --

20         THE COURT:  Yes.

21         MR. DINHOFER:  Not the last page but it's

22  the second-to-last page, I'm sorry.

23         THE COURT:  Go ahead.

24         MR. DINHOFER:  I cite the regulations that

25  talk about these quarter-inch differentials and what

1 they might do with regard to these quarter-inch

2 differentials as to the transitional element.  It's

3 very specific because these little differences to us

4 are huge, insurmountable barriers to people in

5 wheelchairs.  They can cause them to get stuck and

6 jammed and not get past, they can cause them to fall

7 out of their chairs.

8    THE COURT:  So your argument is, they're on

9 constructive notice because they should have inspected

10 that ramp for ADA compliance.  If they had, there would

11 have been a problem and the problem would have been

12 fixed.

13    MR. DINHOFER:  They didn't have a qualified

14 inspection.  They didn't even do a qualified

15 construction.  The man who did the construction, Mr.

16 Reid, admitted at his deposition that he never took any

17 classes in ADA compliance and he knew nothing about the

18 ADA, and that's the problem.  This should have been

19 done by --

20    THE COURT:  How often do they have to do

21 those inspections under the ADA?

22    MR. DINHOFER:  It's never-ending.  The

23 existence of a defect is strict liability under the

24 ADA.

25    THE COURT:  But how frequently do they have

1    to do the inspection?

2             MR. DINHOFER:  I don't know that they have

3    to do inspections at all.

4             THE COURT:  Wait, that's not what you just

5    told me.

6             MR. DINHOFER:  It just has to be there.

7             THE COURT:  That's not what you told me a

8    moment ago.  You said the reason why there's negligence

9    here --

10            MR. DINHOFER:  It's perpetual.

11            THE COURT:  No, sorry.

12            MR. DINHOFER:  It's perpetual.

13            THE COURT:  Counsel, you said the reason why

14   there's constructive negligence is based on their

15   failure to do ADA inspections.

16            MR. DINHOFER:  Right, right.

17            THE COURT:  Once you install the ramp,

18   presumably, there's someone who looks at it and

19   measures it and says, yeah, this is great.  Are there

20   requirements for period inspections thereafter?

21            MR. DINHOFER:  I'd have to go look it up.  I

22   don't remember.

23            THE COURT:  Wow.

24            MR. DINHOFER:  It's been a while since I

25   checked the regs.  But there are requirements to do

1  inspections, yes, in the ADA.  The frequency of them, I

2  don't know.  I think it's as the circumstances warrant

3  because obviously, something like concrete isn't going

4  to change as often as something like wood.

5          THE COURT:  That's interesting.

6          What else do you have to say about that?

7          MS. HECHTKOPF:  Well, with regard to the ADA

8  in particular, it's an accessability standard.  We're

9  talking about regulations under the ADA for

10 accessability.  It's not a safety standard and courts

11 throughout the country have rejected using ADA

12 regulations as a basis for tort liability.  Those are

13 two separate things.  One is safety-related, the torts,

14 and one is accessability.  Of course, we want things to

15 be accessible but not being accessible does not create

16 tort.

17         THE COURT:  Agreed, agreed.  But the

18 question is, to the constructive notice point you and I

19 were talking about a few minutes ago, should that

20 figure in?  Is there a factual issue?  Should we have a

21 jury look at this and say, it was around presumptively

22 long enough that they should have inspected it, and

23 they had nobody assigned to inspect it.

24         MS. HECHTKOPF:  I'm sorry, your Honor, are

25 you asking whether they should have done an ADA

1  inspection or a general inspection?

2  THE COURT: I don't know and I don't know if

3  it matters for purposes of a jury making a negligence

4  determination. Does it matter?

5  MS. HECHTKOPF: Mr. Reid said he was there

6  approximately twice a week. He's in charge of

7  maintenance. He quibbles again with the word

8  "inspection" but he puts in his affidavit that he

9  walked around the premises every time he went there.

10  He looked at things and he made a list of things that

11  needed to get fixed and then he fixed them.

12  THE COURT: Wow.

13  MR. DINHOFER: You have to remember, Judge,

14  this is the Federal Employers Liability Act, where it's

15  negligence to the slightest degree, and the courts have

16  interpreted that to mean both the slightest degree of

17  negligence and the slightest degree of causation.

18  THE COURT: Is he right about that?

19  MS. HECHTKOPF: I don't believe --

20  MR. DINHOFER: In the Second Circuit, yes.

21  THE COURT: Hold on.

22  Go ahead.

23  MS. HECHTKOPF: I was just looking at this

24  for a different FELA case I was dealing with, and it's

25  the causation that the courts have loosened the

1 standard on --

2        THE COURT:  Okay.

3        MS. HECHTKOPF:  -- not the slightest bit of

4 negligence.  You still have to meet all the traditional

5 elements of negligence.  It's the causation element.

6        THE COURT:  Wow.

7        MR. DINHOFER:  No, not in the Second

8 Circuit.  The Second Circuit has a line of cases that

9 are very clear about that.  In fact, there was a

10 decision from the Supreme Court recently about

11 causation, and then there was a debate, well, did that

12 survive?  And then the Second Circuit went on to hold

13 it in a case called Olfac (ph), which is a case by my

14 former partner, Fred Gold, that he did, where the

15 Second Circuit reaffirms the slightest degree of

16 negligence as well in the Second Circuit.

17        THE COURT:  By the way, the fact that your

18 partner litigated the case is interesting but it

19 doesn't give me any --

20        MR. DINHOFER:  I knew Mr. Olfac, too.

21        THE COURT:  That doesn't give any greater

22 weight to the authority.

23        MR. DINHOFER:  No, no.

24        THE COURT:  Okay.  Anything else you'd like

25 to add to all of that?

1          MS. HECHTKOPF:  I think I'm good, your

2   Honor.

3          MR. DINHOFER:  I'd like to save this work

4   and not have to respond to this motion.  I don't think

5   they can win.

6          THE COURT:  Of course you would and I try to

7   reduce it as much as I can, which is what I'm trying to

8   do here.

9          MR. DINHOFER:  I think the reason --

10          THE COURT:  Counsel, just let me say this.

11   Where I'm at at this moment is, on the issue of whether

12   it's within his duties or not, there's definitely an

13   issue of fact.  We're not going to make a motion on

14   that score.  In fact, what I will do for you -- I can't

15   deny you the right to make a motion but I will deem

16   your motion made and deny it as to that issue, okay?

17   But on this other issue, I need a minute.  I'll be

18   back.

19          (Tape off, tape on.)

20          THE COURT:  All right, counsel, as indicated

21   -- first of all, this is very interesting.  You've done

22   a fine job raising the issues -- thoroughly raising the

23   issues, and I think it makes it very clear as to what

24   happens next.  I've already indicated on the record

25   that on the duty issue, I think there's a clear issue

1    of fact just because of the sergeant's report and so

2    forth.

3            So the question is, could the -- was there

4    effectively constructive notice of this small

5    differential in the sidewalk, which I'm told is an inch

6    or less or something in that area?  Of course, it's a

7    different issue for someone who is walking or, as

8    counsel pointed out, for someone who is in a wheelchair

9    as compared to someone who is shoveling.  I mean, this

10   is almost a hidden defect in some ways, depending on

11   how you looked at it.  If you did an ADA-compliant

12   inspection, it wouldn't be hidden.

13           The railroad has good evidence or the MTA

14   has good evidence that they had someone who would

15   examine the property from time to time.  He didn't call

16   it an inspection but he would look around for defects.

17   Should he have seen this defect?  That's a great

18   question, right?  Should he have inspected -- should he

19   have been trained to look for a defect of this level?

20   Maybe.  I don't know the answer.  So it all turns on

21   constructive notice.

22           But here's the thing, and I'm citing from --

23   I'm going to quote from a case called Nachabasem (ph),

24   I think I pronounced that right, versus U.S.  Let me

25   give you the cite.  It's 828 F.Supp. 2d 499, and it's

one of Judge Feuerstein's decisions in this Court. But more importantly, she quotes in turn from a New York Court of Appeals case which you're probably familiar with, <u>Trinsear v. County of Suffolk</u> (ph), N.Y.2d 976, 977. This was all about -- on the issue of whether there's a one-inch or half-inch differential in the sidewalk. The New York Court of Appeals has held that, "whether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury.

I can only believe that by extension, the question of whether or not a defect of that size, shape, magnitude and so forth should have been observed during the inspection that the MTA did of the property is similarly a question. Was the MTA on constructive notice because that inspection should have revealed that defect in my mind has to be a question for the jury.

So what I'm going to do today is deem the motion made. It is denied. I will acknowledge narrowly denied because this is a close question. The question of whether it's within his duty is clearly a fact question. The question of whether or not this particular type of defect -- was it constructive

notice, amount of time -- there are so many factors

here, I have to believe that that's an issue for the

jury.  So I'm going to deny the motion for summary

judgment.

 And that leaves us to set up a trial, so

when would you like to do that?  Let me add, you have

some choices in that regard.  One is, we can try the

case here where we can set a trial date and figure out

when we're going to pick a jury.  You also have the

right, if you'd like, to consent to the magistrate

judge -- I think you have Judge Locke in this case, am

I right about that?

 MS. HECHTKOPF:  Yes, your Honor.

 THE COURT:  You're very fortunate.  He's a

fine jurist, probably better than I am in many

respects.  You do not have to consent to the magistrate

judge for a trial.  There's no prejudice for not so

agreeing, so much so that I don't even want you to tell

me what you think.  You can think about it, talk to

your clients, and decide.  If you decide on that,

you'll let me know, all right?  But assuming it's me

that you're going to stay with, what would be your

preference in terms of when we should do a trial?

Plaintiff's counsel is going to say, I'm good Monday,

Judge, but --

1          MR. DINHOFER:  Actually, I'm not.  I have

2    briefing deadlines and I'm trying to think around that.

3          THE COURT:  I have a few criminal cases and

4    this is always the problem with the district court

5    calendar.  I have to kind of balance it.

6          MR. DINHOFER:  It probably wouldn't be until

7    the middle of May where I would first be available.

8          THE COURT:  Counsel, what about you on your

9    side?  What do you need?

10          MS. HECHTKOPF:  That would be fine, I think,

11    on our side.

12          THE COURT:  Okay.

13          MS. HECHTKOPF:  Depending on the week.

14          MR. DINHOFER:  I didn't bring my phone with

15    me, unfortunately.  My son changed the place where I'm

16    charging it and I left it at home.

17          THE COURT:  Yes.  Life used to be simpler.

18    We had paper.

19          MR. DINHOFER:  Yes.

20          THE COURT:  Let me say you also have some

21    work to do.  We have to do a pretrial order and some

22    jury instructions and so forth, so maybe the middle of

23    May -- is that too ambitious?

24          MR. DINHOFER:  I think yes, it is.

25          THE COURT:  Okay.  I know we have -- we're

1  probably booked out for June, I would think.  No?

2          THE CLERK:  We have June 1st.

3          THE COURT:  We do have June 1st.  One

4  question:  How long is the trial going to be?

5          MR. DINHOFER:  I would assume two days on my

6  part.

7          THE COURT:  Counsel, what about you?

8          MS. HECHTKOPF:  I had a similar trial

9  recently and the whole thing was three days, so I would

10  say somewhere in that range, two to four days.

11          THE COURT:  So if I could block out for a

12  week, we could probably get everything done, yes?

13          MR. DINHOFER:  Sure.

14          MS. HECHTKOPF:  If we can't get this done in

15  a week, then we're doing something wrong.

16          THE COURT:  I like that attitude, counsel,

17  good job.

18          MR. DINHOFER:  I wouldn't go that far.

19          THE COURT:  What have we got?

20          THE CLERK:  June 1st.

21          THE COURT:  How does June 1st sound?

22          MR. DINHOFER:  Works for me.

23          THE COURT:  That's a jury return date, which

24  means we pick a jury in the morning and start in the

25  afternoon.

1          MR. DINHOFER:  I do have to check with the

2    client.  He's moved out of state since we started this

3    lawsuit.

4          THE COURT:  All right.  He might want to

5    come back for the trial.

6          MR. DINHOFER:  No,  I know, we need him

7    here, obviously, but he's in North Carolina now and I

8    just don't know.  My client is also -- he's had a

9    series of strokes and all that, and he's had some

10   cardiac surgeries, so there are other issues that we

11   have to consider.

12         THE COURT:  Let's do this:  Let's pencil you

13   on for June 1st, and you have a couple of moving pieces.

14   One is, you have to confirm all the witness'

15   availability.  Just make sure everybody is good and if

16   you have a problem, let me know.  Secondly, you'll also

17   consider the option of going with Judge Locke, who I'm

18   sure could be even more accommodating with a trial

19   date, depending on what you all want.  There's a form

20   in the ECF system.  If you wanted to do that, you can

21   do that.  I'd wish you well with that so you'll let me

22   know, all right?  If there's a problem with the trial

23   date, though, let us know sooner rather than later

24   because I'm really booking up quick, okay?

25         MR. DINHOFER:  Okay.

```
 1              THE COURT:  All right.  Good seeing all of

 2    you.  Counsel, great job today.

 3              MR. DINHOFER:  Thank you.

 4              MS. HECHTKOPF:  Thank you, Judge.

 5                        *  *  *  *  *  *  *

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    December 7, 2022

**A077**

**UNITED STATES DISTRICT COURT**        **Courtroom 840**
**EASTERN DISTRICT OF NEW YORK**      DATE: 3/6/2020
                                          TIME:  3/6/2020

BEFORE: GARY R. BROWN, U.S. DISTRICT JUDGE

CASE:  **CV 17-2146  (GRB)  Kowalchuck v. Metropolitan Transportation Authority**

                        TYPE OF CONFERENCE: PRE MOTION CONFERENCE

APPEARANCES:        Plaintiff: Philip Jay Dinhofer
.

                   Defendant: Helene R Hechtkopf

COURT REPORTER/FTR#: 10:38-10:55; 11:02-11:09

            **Motion for:**     **SUMMARY JUDGMENT**

              **Movant:**        **DEFENDANT**

Case called.

☒        Counsel for all sides present.

☒        Pre-motion conference held.

                          ☐Parties to meet and confer and submit a schedule within 2 weeks.

                          ☐Motion Schedule set.    Motion served by:

                                   Response served by:

                                   Reply and all papers filed by:

☐        Discovery to proceed while motion is pending. Parties to contact Magistrate Judge assigned to the case to schedule an Initial Conference.

☐        Motion referred to the assigned Magistrate Judge.

☐        Parties consent to Magistrate Judge deciding the case for all purposes.

☒        Motion argued.

☐        Motion is Choose an item.(** No written decision**)

☒        Decision Other:  The Court deems the motion having been made and finds there are  sufficient issues of fact to be determined by a jury. Jury selection and trial set for 6/1/2020 at 9:30 a.m. before Judge Brown.  Joint pretrial order due within 30 days.

**A078**

☐       The parties are to submit order on notice to all parties.

☐       Settlement discussed. Choose an item.

☐       Other:.

# HOGUET NEWMAN
# REGAL & KENNEY, LLP

One Grand Central Place
60 East 42nd Street, 48th Floor
New York, New York 10165

Tel 212.689.8808
Fax 212.689.5101
www.hnrklaw.com

hhechtkopf@hnrklaw.com

July 22, 2022

**BY FEDEX**

The Honorable Gary R. Brown, U.S.D.J.
United States District Court for the Eastern
District of New York
100 Federal Plaza
Courtroom 940
Central Islip, New York 11722

Re:     ***Kowalchuk v. Metropolitan Transit Authority*, No. 17-cv-2146**

Dear Judge Brown:

     We represent the Defendant, Metropolitan Transit Authority, in the above-referenced action.   Pursuant to Section III(b) of Your Honor's Individual Rules & Practices, we write in advance of the August 8 trial in this matter enclosing a set of Defendant's pre-marked trial exhibits. As required, these exhibits have also been exchanged among the parties.  We note for the Court's convenience that DX 10 consists of two video files that are provided on a single USB drive in the front of the binder.

                              Respectfully submitted,

                              Helene R. Hechtkopf

cc: Philip J. Dinhofer, Esq. (via email, with enclosures)



A081





# Activity in Case 2:17-cv-02146-GRB-SIL Kowalchuck v. Metropolitan Transportation Authority Motion for Pre Motion Conference

From:  ecf_bounces@nyed.uscourts.gov

To:  nobody@nyed.uscourts.gov

Date:  Wednesday, February 5, 2020 at 06:07 PM EST

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of New York**

## Notice of Electronic Filing

The following transaction was entered by Hechtkopf, Helene on 2/5/2020 at 6:06 PM EST and filed on 2/5/2020

**Case Name:**        Kowalchuck v. Metropolitan Transportation Authority
**Case Number:**    2:17-cv-02146-GRB-SIL
**Filer:**                 Metropolitan Transportation Authority
**Document Number:** 24

**Docket Text:**
**MOTION for pre motion conference by Metropolitan Transportation Authority. (Attachments: # (1) Exhibit Parties' combined proposed Local Rule 56.1 statements and responses) (Hechtkopf, Helene)**

**2:17-cv-02146-GRB-SIL Notice has been electronically mailed to:**

Helene R Hechtkopf     hhechtkopf@hnrklaw.com

Jason Douglas Barnes     jabarnes@mtahq.org, jason.douglas.barnes@gmail.com

Philip Jay Dinhofer     pjdllc2806@yahoo.com, phildinhofer@hotmail.com

**2:17-cv-02146-GRB-SIL Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP NYEDStamp_ID=875559751 [Date=2/5/2020] [FileNumber=14635282-0]
[8f09e9dd55c76cb546102688acd3cd6dd506783def48af2acc6987da96fdd268f7937
126833b413d16f819fd6939418fe6adeaa71c9f24517cac7e2d4a56c267]]
**Document description:**Exhibit Parties' combined proposed Local Rule 56.1 statements and responses
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP NYEDStamp_ID=875559751 [Date=2/5/2020] [FileNumber=14635282-1]

12/9/22, 4:07 PM                    Yahoo Mail - Activity in Case 2:17-cv-02146-GRB-...chuck v. Metropolitan Transportation Authority Motion for Pre Motion …

**A083**

[2f47a000c2ed38b6ee884bd5ab8401fc8cc73db06d7b366ee5ba8e2563b894c84724a
28cc1c73938fdcadebc951dab2e8048d7b3434535e9b860e50fc6e4f29e]]